MRS. ELIZABETH PEARSON, WIDOW OF CARL A. PEARSON, DECEASED, (EMPLOYEE) v. PEERLESS FLOORING COMPANY (EMPLOYER), TEXTILE INSURANCE COMPANY (CARRIER); MOORE DRY KILN COMPANY (EMPLOYER), AND STANDARD ACCIDENT INSURANCE COMPANY (CARRIER).

(Filed 10 January, 1958)

1. **Master and Servant § 55d—**

   Where it appears by the record that the court, after a full review of the evidence, adopted the findings of fact made by the Industrial Commission as its own as fully as if set out in the judgment, and found that such findings were supported by evidence and that they were correct, objection that the court failed to review the evidence and make its own findings in regard to jurisdictional facts is not supported by the record.

2. **Same—**

   What was the contract between the parties and the facts in regard to their relationship and the dealings between them are questions of fact upon which the Commission's findings are conclusive when supported by evidence; whether upon such facts the relationship between the parties was that of master and servant or employer and independent contractor is a question of law reviewable by the courts.

3. **Master and Servant § 39b—Facts held to support conclusion that mechanic supervising installation of kiln was employee and not independent contractor.**

   Findings to the effect that the seller of materials for the construction of dry kilns recommended upon the purchaser's request an expert

mechanic to supervise their installation under contractual agreement that such mechanic should be considered an employee of the purchaser, that the purchaser paid such mechanic compensation at a stipulated sum per hour, plus board and transporation, that the purchaser furnished all materials and labor to assist the mechanic, that the mechanic could perform his work only during the hours the labor so furnished was available, with facts supporting the inference that the purchaser could discharge the mechanic at any time for any reason, and that the mechanic was merely supervising the installation of the kilns because the purchaser had no foreman with sufficient experience and skill to supervise the installation in accordance with the plans and specifications furnished by the seller, *are held* to support the legal conclusion that the mechanic was an employee of the purchaser rather than an independent contractor.

**4. Master and Servant § 4a—**

A person contracting to do certain work who reserves the right to control the manner or method of performance and who is responsible to the employer solely as to the result is an independent contractor; while if the employer retains the right of control with respect to the manner or method of doing the work, the relationship of employer and employee obtains regardless of whether such control is exercised or not.

APPEAL by defendants Peerless Flooring Company and Textile Insurance Company, its compensation insurance carrier, from *Rousseau, J.,* March 11, 1957, Civil Term, GUILFORD, Greensboro Division.

Compensation claim by the widow of Carl A. Pearson. Pearson was fatally injured by accident while supervising the installation of two dry kilns for and on the premises of Peerless in High Point, N. C.

The hearing commissioner, based on his findings of fact, made these conclusions of law: (1) Moore was not subject to the Act, having less than five employees regularly employed in the same business or establishment in North Carolina, G.S. 97-2(a) ; (2) Peerless was subject to the Act, but Pearson was an independent contractor, not an employee of Peerless. The hearing commissioner's award dismissed plaintiff's claim "for lack of jurisdiction."

On plaintiff's appeal, the full Commission vacated and set aside the findings of fact, conclusions of law and award of the hearing commissioner. In lieu thereof, the Commission made its own findings of fact, conclusions of law and award, to wit:

### "FINDINGS OF FACT"

"1. That in October 1954 the Peerless Flooring Company of High Point, hereinafter called 'Peerless,' and the Moore Dry Kiln Company of Jacksonville, Florida, hereinafter called 'Moore,' entered into written agreements for the purchase of equipment for the installation of two dry kilns; that the equipment was purchased by Peerless from Moore; that such agree-

ments provided, among other things, 'Experienced mechanics are available at $2.25 per hour ($18.00 per day), plus board and transportation from and to Jacksonville, Florida. If you (Peerless) desire and request, we (Moore) will recommend such mechanic to superintend the installation of equipment. It is understood and agreed, however, that this mechanic is to be your (Peerless') employee and that we (Moore) have no liability or responsibility in connection with his employment'; *that this contract* between Peerless and Moore *is* by this reference *made a part of this finding* the same as if herein fully rewritten; that shortly after the execution of this contract, Mr. J. A. Johnson, Secretary and Treasurer and General Manager of Peerless Flooring Company, who executed said contract on behalf of Peerless, requested Moore to contact an experienced mechanic to supervise the installation of the kilns; that thereupon Moore communicated Johnson's request to Carl A. Pearson, who was an experienced mechanic in the installation of dry kiln equipment, and sent Pearson a copy of the plans and specifications of the installation. (Our italics)

"2. That Pearson reported at High Point at the Peerless Company on or about November 7, 1954 and advised Mr. Johnson that he was ready to begin the installation of the kilns; that Johnson advised the deceased that Peerless would furnish the deceased with men or anything else that he needed in the installation and advised the deceased to call upon Peerless for any of his needs concerning the installation; that Peerless did not place the deceased upon its payroll, make social security or income tax deductions, or otherwise treat him as an employee on its records.

"3. That Mr. Johnson, acting for Peerless, employed an independent contractor, E. E. Younts, a corporation, to secure men to assist the deceased in the installation of the kilns; that the work of E. E. Younts was to be paid for by Peerless on the basis of cost plus ten percent; that the deceased did not start upon the installation of the kiln equipment for approximately two days after his arrival in High Point, because the necessary material had not arrived from Moore; that after the necessary material arrived, the deceased undertook the supervision of the installation of the kilns, said installation being done by employees of E. E. Younts and also on occasion by employees of Peerless, when the deceased advised that additional workers were needed in the installation; that such employees would only work for a few minutes or for the day or as they were requested by the deceased; that the deceased supervised the work of all such employees engaged in the installation, including the employees of E. E. Younts.

"4. That on the first Monday following the beginning of the installation of the kiln equipment, the deceased submitted to Mr. Johnson a bill or statement for $171.50, which was for board and room, travel, and compensation; that Johnson advised the deceased that Peerless could not pay him the requested amount, inasmuch as part of this time was spent in waiting for the equipment during which time the deceased performed no labor for Peerless; that there followed a communication between Mr. Johnson and Moore, or its representative, which resulted in a compromise settlement, under the terms of which Peerless paid the deceased $105.75 for travel, room and board, and compensation for services, and Moore paid the deceased, or his estate $65.00 for room and board and compensation for the time that the deceased had been in High Point before the material arrived at Peerless and the installation of the kilns was commenced.

"5. That during the course of the installation of the kilns, Mr. Johnson observed the progression of the work several times each day as he made his regular and customary rounds of the Peerless plant; that on one occasion, Johnson made a suggestion to the deceased concerning the work of installing the kilns, such suggestion concerning the routing of a pipe line being changed from the location called for in the plans and specifications provided by Moore; that Johnson suggested to the deceased that it might be possible to change the line to another location and the deceased stated that the only way that he would make any change would be to draw out a drawing and send it to Moore at Jacksonville for its approval; that the deceased then made such a drawing, which was submitted by Mr. Johnson and the deceased to Moore, and Moore advised that it was satisfactory to proceed per the deceased's drawing.

"6. That while supervising the installation of the kilns, the deceased worked full work days during the time that Peerless was open and the employees of Peerless and E. E. Younts were present; that the deceased reported to no one at Peerless when he started and stopped work and kept his own time and records.

"7. That the deceased, at the time of his death, was an employee of Peerless Flooring Company, having been employed to supervise the installation of two dry kilns; that he was paid for his time on an hourly basis plus a lump sum for room and board, such pay being paid by the Peerless Flooring Company, except the two days which were paid for by Moore by reason of the fact that it had not furnished the equipment on schedule; that the deceased was subject to discharge by Peerless; that he worked the regular hours of other Peerless employees assisting him, which employees were selected by the Peerless Flooring Company; that there was no special skill required in the installation

of the dry kilns, approximately fifty percent of all dry kiln equipment sold by Moore being installed by its customers without the assistance of a trained mechanic such as deceased; that there was no written contract between Peerless and the deceased, although there was a written contract between Peerless and Moore, as set out in Finding of Fact No. 1.

"8. That on November 19, 1954 the deceased sustained an injury by accident arising out of and in the course of his employment by the Peerless Flooring Company, resulting in his immediate death.

"9. (Re: Facts relevant solely to the liability of Moore.)

"10. (Re: Plaintiff's status as sole dependent, entitled to full amount of compensation payable.)"

In its conclusions of law, the Commission held that Moore was subject to the Act under the provisions of G.S. 97-13 (b) but that Pearson was the employee of Peerless, not of Moore. The Commission awarded compensation to plaintiff, based upon its factual findings and legal conclusions to the effect that Pearson's death arose out of and in the course of his employment by Peerless.

Peerless and its carrier appealed to the superior court upon exceptions to designated findings of fact, conclusions of law and the award. Their basic position was and is that the Industrial Commission had no jurisdiction because of plaintiff's failure to establish the existence of an employer-employee relationship between Peerless and Pearson.

Moore and its carrier also appealed to the superior court; but their exceptions to the findings of fact and conclusions of law of the Commission are not relevant to this appeal.

Judge Rousseau, "having reviewed and considered the transcript of testimony and other evidence and matters contained in the record in this cause, and having reviewed and considered the Findings of Fact and Conclusions of Law of the Full North Carolina Industrial Commission, and the Court being of the opinion that the Findings of Fact made by the Full North Carolina Industrial Commission are supported by competent evidence and are correct, (with exception noted below) . . . and that the Conclusions of Law of the Full North Carolina Industrial Commission based upon said Findings of Fact are correct, (with the exception noted below) . . . and that the said award of the Full North Carolina Industrial Commission should be affirmed," entered judgment: (1) that "each and every one of the exceptions and assignments of error" of Peerless and its carrier "be and hereby are denied and overruled"; that "each and every one of the Findings of Fact and Conclusions of Law of the Full North Carolina Industrial Commission be and hereby is in all

respects approved and expressly adopted by the Court as fully as if set forth *verbatim* in this judgment" (with the exception noted below), and that "the award of the Full North Carolina Industrial Commission filed on November 8, 1956, allowing the plaintiff compensation as ordered in said award (against Peerless and its carrier) be and hereby is in all respects affirmed."

The exceptions indicated by parentheses above related to Moore's appeal. While no award was ever made against Moore and its carrier, Judge Rousseau's judgment set aside the full Commission's findings of fact and conclusions of law to the effect that Moore was subject to the Act and dismissed plaintiff's claim as to Moore and its carrier "for that the North Carolina Industrial Commission has no jurisdiction over claim against said defendants."

Peerless and its carrier excepted to said judgment and appealed.

*King, Adams, Kleemeier & Hagan for plaintiff, appellee.*
*Sapp & Sapp for defendants Peerless Flooring Company and Textile Insurance Company, appellants.*
*Smith, Moore, Smith, Schell & Hunter for defendants Moore Dry Kiln Company and Standard Accident Insurance Company, appellees.*

BOBBITT, J. The judgment as to Moore and its carrier is final. Plaintiff did not appeal. Cf. *Willingham v. Rock & Sand Co.*, 240 N.C. 281, 82 S.E. 2d 68. Moreover, plaintiff, in his brief, says: "There is no evidence which could possibly support the conclusion that Pearson was an employee of Moore."

This appeal relates solely to plaintiff's claim as against Peerless and its carrier. If Pearson was the employee of Peerless, as plaintiff contends, the death was compensable. If Pearson was not the employee of Peerless, but an independent contractor, as appellants contend, the Industrial Commission had no jurisdiction and the proceeding should be dismissed. Admittedly, Peerless and its employees were subject to the Act. The crucial question is whether the employer-employee relationship existed as between Peerless and Pearson.

Appellants insist that Judge Rousseau should have, but did not, make independent findings of fact relevant to the controverted jurisdictional question, citing *Hart v. Motors*, 244 N.C. 84, 92 S.E. 2d 673, and *Aylor v. Barnes*, 242 N.C. 223, 87 S.E. 2d 269, which cite, *inter alia*, *Aycock v. Cooper*, 202 N.C. 500, 163 S.E. 569, and *Francis v. Wood Turning Co.*, 204 N.C. 701, 169 S.E. 654. These cases support the view that when a defendant-employer challenges the jurisdiction of the Industrial Com-

mission, "the findings of fact made by the Commission, on which its jurisdiction is dependent, are not conclusive on the Superior Court, and . . . said court has both the power and the duty, on the appeal of either party to the proceeding, to consider all the evidence in the record, and find therefrom the jurisdictional facts, without regard to the finding of such facts by the Commission." *Aycock v. Cooper, supra.* It is noted that *Hart v. Motors, supra,* and *Francis v. Wood Turning Co., supra,* relate to whether the injured party was an employee; that *Aylor v. Barnes, supra,* relates to whether the injured employee, within the meaning of G.S. 97-36, was a resident of this State and entitled to compensation on account of an accident in Virginia; and that *Aycock v. Cooper, supra,* relates to whether the employer had less than five employees regularly employed in his business within this State.

Yet, in a series of cases where the controverted jurisdictional question was whether the injured party was an employee or an independent contractor, this Court appears to have based decision on the rule applicable to non-jurisdictional questions, which, as stated in *Lassiter v. Telephone Co.,* 215 N.C. 227, 230, 1 S.E. 2d 542, is as follows: "It is established in this jurisdiction that the findings of fact made by the Industrial Commission, if supported by competent evidence, are conclusive on appeal and not subject to review by the Superior Court or this Court, although this Court may have reached a different conclusion if it had been the fact finding body." See *Scott v. Lumber Co.,* 232 N.C. 162, 59 S.E. 2d 425; *Cooper v. Ice Co.,* 230 N.C. 43, 51 S.E. 2d 889; *Creighton v. Snipes,* 227 N.C. 90, 40 S.E. 2d 612; *Graham v. Wall,* 220 N.C. 84, 16 S.E. 2d 691; *Cloninger v. Bakery Co.,* 218 N.C. 26, 9 S.E. 2d 615.

Whether the facts found by the Commission are supported by competent evidence, *McCraw v. Mills, Inc.,* 233 N.C. 524, 64 S.E. 2d 658, and whether the facts found by the Commission support the legal conclusion that the injured party was an employee, *Smith v. Paper Co.,* 226 N.C. 47, 36 S.E. 2d 730, and *Hayes v. Elon College,* 224 N.C. 11, 29 S.E. 2d 137, and *Beach v. McLean,* 219 N.C. 521, 14 S.E. 2d 515, are reviewable by the court as questions of law.

In *Beach v. McLean, supra,* Barnhill, J. *(later C. J.),* in an analysis of the extent to which the courts were bound by the Commission's finding and conclusion that the injured party was an employee of the corporate defendant, says: "(1) what were the terms of the agreement—that is, what was the contract between the parties; and, (2) what relationship between the parties was created by the contract—was it that of master and servant or that of employer and independent contractor? The

first involves a question of fact and the second is a question of law." Again: "The Commission having found the facts in respect to the terms and conditions upon which McLean undertook the work of dismantling and salvaging the machinery purchased by defendant from Superior Yarn Mills, it settled the question of fact involved in the 'finding' or conclusion as to the nature and extent of the contract. Hence, the element of fact involved in the conclusion is settled. Both the court below and this Court are bound thereby. The only question presented is the legal status of McLean under the contract. The Commission's conclusion in this respect is reviewable." (Here the injured party was employed by McLean; and the crucial question was whether McLean was an independent contractor or an agent of the corporate defendant.

The cases cited above (except *Lassiter v. Telephone Co.*) turn on whether plaintiff was an employee; but none prior to *Aylor v. Barnes, supra,* cites either *Aycock v. Cooper, supra,* or *Francis v. Wood Turning Co., supra.* While the rule announced in those cases was not applied in the intermediate cases, apparently there was no express reconsideration or discussion of its soundness. Even so, in the case before us, we need not undertake to reconcile or to resolve the apparent conflict in the cited decisions.

The record, fairly interpreted, does not show that Judge Rousseau failed to consider the evidence and make his own findings of fact therefrom. Indeed, the stronger inference is that he did so. Certainly, if he considered the findings of fact of the Commission correct, and his judgment so states, the rule contended for by appellants would not require a mere rephrasing of essentially the same factual findings in order to demonstrate that the findings made by him were his own rather than an approval of the Commission's findings because supported by *some* competent evidence.

The record shows that Judge Rousseau, after *a full review* of the evidence, found not only that the findings of fact of the Commission were supported by competent evidence but that they were *correct.* He adopted the findings of fact made by the Commission as his own "as fully as if set forth *verbatim* in this judgment." The phraseology of the judgment, quoted above, takes on special significance when considered in the light of the fact that Peerless and its carrier, in their "proposed findings of fact, conclusions of law, and judgment" had specifically brought to Judge Rousseau's attention that it was "the duty of this Court to find the facts from the evidence herein" and to base the court's legal conclusions on such findings.

Unquestionably, the record discloses that the findings of fact, made by the Commission and also by Judge Rousseau, are sup-

ported by ample competent evidence. The only remaining question is whether the facts so established support the legal conclusion that Pearson was an employee rather than an independent contractor. *Smith v. Paper Co., supra.*

In *Hayes v. Elon College, supra,* Barnhill, J. (later C. J.), citing many cases, discusses the distinction between an "employee" and an "independent contractor." Too, he sets forth a number of elements which ordinarily tend to identify either the employee relationship or the independent contractor relationship. He adds: "The presence of no particular one of these *indicia* is controlling. Nor is the presence of all required. They are considered along with all other circumstances to determine whether in fact there exists in the one employed that degree of independence necessary to require his classification as independent contractor rather than employee."

In subsequent cases, including *Smith v. Paper Co., supra, Scott v. Lumber Co., supra,* and *Cooper v. Ice Co., supra,* both the general principles relating to the respective relationships and the incidents of each are set forth and need not be repeated.

These *indicia* established by the findings of fact, tend to support the view that Pearson was an employee, viz.:

1. According to their written contract, the equipment and materials were sold by Moore to Peerless, f.o.b., Jacksonville, Florida. While Moore agreed to furnish and did furnish "complete plans and specifications recommended for the construction of kiln buildings and installation of equipment," the installation was to be made by Peerless.

2. If desired and requested by Peerless, Moore agreed to recommend an experienced mechanic "to superintend the installation of equipment." But, it was agreed, if Peerless engaged the services of a mechanic recommended by Moore upon request by Peerless, "this mechanic is to be your (Peerless') employee."

3. At the request of Peerless, Moore recommended Pearson; Pearson's compensation was $2.25 per hour plus board and transportation from and to Jacksonville. As pointed out in *Hayes v. Elon College, supra,* "doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis," ordinarily is incident to the relationship of independent contractor; but, as stated by Larson, Workmen's Compensation Law, Vol. 1, Sec. 44.33, "Payment on a time basis is a strong indication of the status of employment."

4. Pearson was not free to employ assistants or to purchase materials. All materials were provided by Peerless; and all labor, that of the employees of Younts, an independent contractor, and that of its regular employees, was provided by Peerless. Freedom to select such assistants as he may think proper ordinarily

is incident to the relationship of independent contractor. *Hayes v. Elon College, supra.*

5. Ordinarily, the selection of one's own time for the performance of his work is incident to the relationship of independent contractor. *Hayes v. Elon College, supra.* But Pearson could perform his work only during the hours when the employees of Peerless or of Younts were available.

6. Peerless had the right to discharge Pearson. Appellants contend: "The test is whether or not Pearson was subject to discharge solely because he adopted one plan over the other for the installation of the dry kilns." It may be fairly inferred that Pearson, employed on an hourly wage plus board and transportation basis, had no legal right to remain at this job until the installation was completed; and it would appear that Peerless had the right to discharge him for any reason or no reason, without obligation other than payment of his agreed wages for the number of hours he worked plus board and transportation expense.

7. If Peerless had had in its regular employment a mechanic or construction foreman with sufficient experience and skill to supervise the installation in accordance with the plans and specifications therefor furnished by Moore, unquestionably his status as employee would not have been altered by the fact that Peerless reposed in him the responsibility of directing and supervising the installation. Under the circumstances here disclosed, there would seem little, if any, difference between the status of such employee and the status of one specially employed (Pearson) to perform such services.

"An independent contractor is one who exercises an independent employment, and contracts to do specified work for another by his own methods without subjection to the control of his employer, except as to the result of his work. His one indispensable characteristic is that he contracts to do certain work, and has the right to control the manner or method of doing it. The test to be applied in determining whether the relationship of the parties under a contract for the performance of work is that of employer and employee, or that of employer and independent contractor is whether the party for whom the work is being done has the right to control the worker with respect to the manner or method of doing the work, as distinguished from the right merely to require certain definite results conforming to the contract. If the employer has the right of control, it is immaterial whether he actually exercises it. (Citations omitted)" *Ervin, J.,* in *Scott v. Lumber Co., supra.* ". . . and it is not material as determinative of the relationship whether the employer actually exercises the right of control. (Citations omit-

ted)" *Devin, C. J.,* in *Hinkle v. Lexington,* 239 N.C. 105, 79 S.E. 2d 220.

We attach no particular significance to the fact that Johnson was often present as the work progressed. Naturally, as the secretary-treasurer and general manager of Peerless, he was interested. Nor do we attach much weight to the fact that Johnson suggested a change in plans, which, on the basis of a drawing prepared by Pearson, was approved by Moore.

True, the objectives of Peerless and of Pearson were identical, that is, to make the installation in accordance with the Moore plans and specifications. Indeed, it appears that Pearson was employed because of his experience and skill in this type of work; but the mere fact that Pearson was experienced and skilled in the type of work for which he was employed does not imply that Peerless had lost *its right to control* Pearson's conduct during the progress of the work and to intervene if perchance (1) Peerless objected to any instructions given by Pearson to the employees of Peerless or of Younts, or (2) Peerless considered the installation as directed by Pearson to be in violation of the Moore plans and specifications, or (3) the installation as directed by Pearson was objectionable to or interfering with the other operations of Peerless. The mere fact that no occasion actually arose, except the incident mentioned, when Peerless did intervene to exercise its right of control, does not negative the existence of its right to do so.

For the reasons stated, there is no error in the court's conclusion that Pearson was fatally injured by accident arising out of and in the course of his employment by Peerless. Indeed, this case is strikingly similar to *Smith v. Paper Co., supra,* where the same conclusion was reached.

We have examined each of appellants' assignments of error. Suffice to say, none discloses error deemed sufficient to affect the result or to require particular consideration.

Affirmed.