CANADIAN UNIVERSAL INSURANCE
COMPANY (formerly Newfoundland
American Insurance Company, Limited), Plaintiff,

v.

John D. SIMS, d/b/a Burlington Stack
and Tank Painting Company, and
Howard Pegram, Defendants.

No. C-212-G-63.

United States District Court
M. D. North Carolina,
Greensboro Division.

Nov. 17, 1964.

Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., for the plaintiff.

J. Owen Lindley and Cahoon & Swisher, Greensboro, N. C., for defendant Howard Pegram.

E. L. Alston, Jr., Greensboro, N. C., for defendant John D. Sims, d/b/a Burlington Stack and Tank Painting Co.

GORDON, District Judge.

This action is brought under the provisions of 28 U.S.C. § 2201 and § 2202 for a declaratory judgment. The sole question involved herein is whether the defendant Howard Pegram, was at the time of his alleged injury on February 16, 1963, an employee of the defendant John D. Sims, d/b/a Burlington Stack and Tank Painting Company, within the purview of the following clause in the insurance policy which had been issued by the plaintiff, Canadian Universal Insurance Company, to the defendant John D. Sims, d/b/a Burlington Stack and Tank Painting Company:

"Exclusion—This policy does not apply:

"(k) under coverage A, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured; * * *"

The Court answers the question in the affirmative for reasons hereinafter set forth.

FINDINGS OF FACT

1. On February 16, 1963, the plaintiff Insurance Company had in force an insurance policy (Number NMCL 7184) issued to the defendant Sims, d/b/a Burlington Stack and Tank Painting Company, that excluded from its coverage, as provided by the provision of the policy hereinbefore quoted, injuries to any employee of Sims.

2. On the occasion in question, Sims had obtained a contract to paint a smoke stack on the premises of George C. Brown Lumber Company, in Greensboro, North Carolina, for the sum of $70.00. On the morning of February 16, 1963, Sims picked Pegram up at Pegram's residence and carried him to George C. Brown Lumber Company, at which time Pegram looked at the smoke stack and based upon the time Pegram thought it would take to

paint the stack, Pegram orally agreed to paint the smoke stack for $40.00. Sims and Pegram together unloaded the rigging, tools, and paint from Sim's truck to the roof of the building where the smoke stack was located. After which Sims went up on the roof where he helped Pegram raise himself up the smoke stack. During this time, the rigging slipped and Pegram fell injuring himself.

3. Sims owned, selected and furnished all of the rigging equipment, brushes, paint and supplies that Pegram used and transported him to the job site. Pegram furnished nothing but his labor.

4. On November 8, 1963, Pegram instituted a lawsuit against Sims in the Superior Court of Guilford County, North Carolina, claiming that his fall and consequent injuries were due to the negligence of Sims. At the present time, this suit is pending in the Superior Court aforesaid.

5. For sometime prior to the accident herein involved, and at the time of the instant accident, Sims worked as a paint contractor, specializing in smoke stack and tank painting. Pegram was a steeplejack painter, and he and Sims often worked together on a similar work relationship to that existing in the subject case. Jobs were obtained by Sims who would then engage the services of Pegram, or another person, to do the actual painting of the smoke stack or tank. It was the practice of Sims to take Pegram to the job sites and orally agree with him on what he would charge for his labor. Pegram did the specified work for Sims for a lump sum, but based his charges for labor on the estimated time that Pegram thought it would take to do the painting. No amounts were ever deducted for taxes or social security by Sims from the amount paid Pegram.

6. It was the practice between Sims and Pegram, after an agreement was made as to the amount Pegram would charge, to jointly unload the rigging, paint, and supplies from Sims' truck. Sims would then help Pegram in preparation of the paint and rigging, and Sims would help Pegram raise himself up the

smoke stack or tank which was to be painted. Sims did not actually climb the smoke stacks or tanks, but would usually stay at the job site with Pegram in order to pass him paint or equipment. Sims also would go after more paint or supplies, if such were required, and would paint the lowest part of the smoke stack or water tank himself while Pegram painted the upper portion. Pegram would do 80 per cent to 90 per cent of the manual labor, and Sims did the rest.

7. Sims had substantial right of control over Pegram on the jobs and supervised each job to see that it was done properly. When Sims saw that Pegram had made a mistake while he was painting or missed a spot, he would point this out to Pegram for correction. Although the situation never arose, Sims could have dismissed Pegram if he failed to do the work properly.

8. Pegram never contracted to paint stacks or tanks directly with the property owner. Sims had no full-time employees, but had engaged Pegram on an average of twice a month or more since 1961. Sims, after considering the convenience of the owner of the property to be painted, determined when Pegram was to do work and provided Pegram with transportation to and from the job sites.

9. Except for the amount of compensation to Pegram on each respective job, the same employment relationship, terms and conditions existed between Sims and Pegram on February 16, 1963, as had existed on all jobs performed by them prior to February 16, 1963.

## DISCUSSION

In order to determine the question before this Court, several principles of law must be observed. One of the determining factors as to whether a person is an employee or an independent contractor is control. The right to control the workman with respect to the manner and method of doing the work, regardless of whether such right is exercised or not, as distinguished from the mere right to require certain results, is usually determinative that the relation-

ship between the parties is that of employer and employee and not that of principal and independent contractor. Pearson v. Flooring Company, 247 N.C. 434, 101 S.E.2d 301 (1958); Hayes v. Board of Trustees of Elon College, 224 N.C. 11, 29 S.E.2d 137 (1944).

One of the leading cases in North Carolina on the distinction between an employee and independent contractor is Hayes v. Board of Trustees of Elon College, supra. In the opinion written by Judge Barnhill, he stated that the vital test was whether the employer has retained the right of control or superintendence over the contractor or employee as to details. Judge Barnhill considered other elements involved by saying,

"What, then, are the elements which ordinarily earmark a contract as one creating the relationship of employer and independent contractor? The cited cases and the authorities generally give weight and emphasis, amongst others, to the following:

"The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time. * *

"The presence of no particular one of these indicia is controlling. Nor is the presence of all required. They are considered along with all other circumstances to determine whether in fact there exists in the one employed that degree of independence necessary to require his classification as independent contractor rather than employee."

Another element to be considered along with the others is whether the person doing the work has been furnished all of his tools. If the workman has been furnished tools, it is evidence of an employer-employee relationship. 99 C.J.S. Workmen's Compensation § 96.

In applying these elements to the facts herein, the Court is of the opinion that there existed an employer-employee relationship between Sims and Pegram.

First, as to whether Pegram was engaged in an independent business, calling, or occupation, the Court is of the opinion that he was not. Both Sims and Pegram were engaged in painting smoke stacks and water tanks, and the work of one complimented the work of the other. Sims obtained the contracts, supplied the materials, and performed about 10 per cent of the work; while Pegram did the rest. Second, the Court must consider whether Pegram had the independent use of his special skill, knowledge, or training in the execution of the work. No one would doubt that Pegram had the independent use of his skill in manipulating his equipment while on the smoke stack. The work was of such nature that it could not be otherwise. However, Sims remained on the ground to supervise and see that the job was properly done. Sims also did some of the work himself and would point out any portions Pegram missed or mistakes made. Such is not indicative of an independent contractor relationship. Third, the fact that Pegram painted the smoke stack for a lump sum is indeed an indication that Pegram was an independent contractor, but this fact is not determinative of the relationship, and significance must be attached to the fact that time was the factor used in determining the amount to be paid Pegram.

Fourth, from the facts, the Court is of the opinion that there are no alternative methods for painting a smoke stack; and, therefore, a choice of method was not available, but if Pegram did not per-

form as required, Sims would have fired him and gotten someone else to do the work. Fifth, the record shows that Pegram was not employed full-time by Sims, but the fact that Pegram had been engaged by Sims twice a month or more for two years prior to the accident, and only worked with one other employer, is more consistent with an employer-employee relationship than an independent contractor relationship. Sims had no full time employees and did not have regular work available. Sixth, the Court is of the opinion that Pegram could not freely engage assistants and exercise complete control over them. The evidence is that no assistants were ever hired, but it appears that if Pegram did want help he would have to have the approval of Sims.

Seventh, Pegram could only work when Sims wanted him to. Without Sims, Pegram had no way to get to the job site or equipment with which to work. Eighth, the fact that all the equipment which Pegram used in painting was supplied by Sims is indicative of an employer-employee relationship.

Ninth, and as hereinbefore stated, the most vital factor involved is that of control. The Court is of the opinion that the control actually exercised over the work performed reflects that an employer-employee relationship existed. Pegram was entirely dependent on Sims for his transportation to and from the job site, and therefore the hours which would be worked were controlled by Sims. Pegram could not have painted any of the smoke stacks or water tanks which Sims contracted to paint without the equipment and supplies furnished by Sims, and would have been unable to raise himself up the smoke stack or water tank without Sims' help. From the facts, it is evident that the right to control existed and was actually exercised by Sims.

## CONCLUSIONS OF LAW

1. The relationship of the defendant Pegram to the defendant Sims was, on February 16, 1963, in the painting of the George C. Brown Company smoke stack, that of employee.

2. The policy of insurance (Number NMCL 7184) issued by the plaintiff, Canadian Universal Insurance Company, to defendant John D. Sims, d/b/a Burlington Stack and Tank Painting Company, does not cover the claims for damage by Howard Pegram against John D. Sims arising out of any occurrence on February 16, 1963, in which Pegram was injured while painting a smoke stack at the George C. Brown Lumber Company in Greensboro, North Carolina.

Counsel for plaintiff will prepare and submit to the Court an appropriate judgment.