The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner William Bost and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the alleged injury, Springfield Communications (hereinafter Springfield) did not have workers' compensation insurance coverage.
2. At the time of the alleged injury, Travelers Insurance Company was the workers' compensation insurance carrier for Fiber and Cable Works (hereinafter FCW).
 ***********
The Full Commission finds facts as follows:
 FINDINGS OF FACT
1. In May, 1996, the plaintiff, Steven W. Steury, sought employment with FCW, who had a contract at that time with Time Warner Cable to install/splice a TV cable system in Greensboro, North Carolina. FCW advised plaintiff that he would need to contact FCW's subcontractor, Springfield with respect to employment. Subsequently, around the middle of May, 1996, plaintiff met with Scott Erickson, the proprietor of Springfield, and was told by Mr. Erickson that the plaintiff could work as an independent contractor of Springfield, in which case he would have to obtain his own workers compensation and liability insurance and receive payment of 22 cents per foot of cable installed/spliced, or he could work for 19 cents per foot of cable installed/spliced, and Springfield would provide insurance coverage. Plaintiff agreed to work for 19 cents per foot, and began working for Springfield on or about 16 May 1996.
2. No written agreement was entered into between Springfield and plaintiff, nor was plaintiff advised that his services would cease upon any particular date, or upon completion of a particular job. Mr. Erickson testified about the initial conversation with plaintiff as follows:
 We were discussing the fact that we had a position available. It was temporary, a possible permanent position. I'd have to get prior approval before I could hire him, which I assumed would be okay at the time. We discussed income, and job titles, and who was providing the tools and trucks and material to do the job.
3. Plaintiff had approximately 18 years of experience in installing and splicing cable, and it was common practice in the industry for workers such as plaintiff to be paid on a production basis, rather than hourly. Plaintiff did not own a business, nor did he have a business name, a business license, a tax I.D. number, business insurance, or any employees. He had never owned or operated a business of his own.
4. Plaintiff was to report for work each morning at approximately 7:30 a.m., at which time he would be given a work assignment for that day, and given materials and supplies needed for the day's job. Additionally, he was instructed that his work was to be completed by 5:00 p.m. Plaintiff gave Springfield a weekly report of the work he performed, and was paid 19 cents per foot, based upon his weekly production of cable installed/spliced. No taxes or social security payments were withheld from his check, but 10% was withheld as security to Springfield to ensure that the work was properly done. Another 15% of plaintiff's check was withheld by Springfield which plaintiff thought was for insurance, but Springfield claims it was for supervision and maintenance.
5. Plaintiff used his own truck to travel to and from the job site each day, and used his own hand tools. Springfield provided the plaintiff with a ladder, and Springfield and FCW provided plaintiff with all materials and supplies used on the job. From the time he began working for Springfield until his injury, the plaintiff did not work for anyone else. plaintiff's work was not closely supervised, as he was experienced in the trade, although there was sporadic checking to insure his work had been completed, and Springfield reviewed workers periodically for pay increases. There was no contract between the plaintiff and Springfield that provided a lump sum price for a specific piece of work, nor any agreement that provided a date upon which the work of the plaintiff was to be completed. Plaintiff was dischargeable at any time by Springfield, as there was no contractual restriction on its right to terminate plaintiff.
6. Springfield was a sole proprietorship of Scott Erickson. Its only business was installing/splicing TV cable lines pursuant to a contract that Springfield had with FCW, who in turn had contracted the work from Time Warner Cable. The installation/splicing of the cable was done by six or seven persons whose relationship to Springfield was the same as the one between the plaintiff and Springfield. They did the same work, but were each paid according to experience and ability, and were subject to pay increases. The contract between Springfield and FCW provided that Springfield was not to subcontract the work without written authorization from FCW, and no such authorization was ever given by FCW to permit Springfield to subcontract work to the plaintiff, or any of the other workers. Plaintiff and the other six or seven persons working for Springfield were Springfield's employees.
7. On 1 April 1996, Time Warner Cable contracted with FCW for FCW to perform work on a cable TV system in Greensboro, NC, and other areas. On 9 May 1996, FCW subcontracted with Springfield to perform the work for FCW relating to the agreement between Time Warner Cable and FCW, and that contract provided that the work was to be completed by 31 December 1996. Mr. Erickson testified that Springfield had a prior agreement to do subcontracting work for FCW in Paducah, Kentucky, and when that was completed, he moved to Greensboro in approximately April, 1996. Springfield did not provide a Certificate of Insurance to FCW when it signed the subcontracting agreement for Greensboro with FCW on May 9, 1996, but simply relied upon the certificate for the Paducah, Kentucky job. The only documentary evidence offered by the defendants in an attempt to show compliance with N.C. Gen. Stat. § 97-19 was a Certificate of Insurance dated 07-11-95 issued to Springfield Communications in Paducah, Kentucky. On its face, the certificate expired on 05-17-96, eight days after the signing of the subcontracting agreement that is the subject of this claim. It seems obvious that the Certificate of Insurance related to the job in Paducah, Kentucky, and has no relationship to the subcontracting agreement for Greensboro entered into on May 9, 1996. FCW offered no evidence that it received any other Certificate of Insurance, or notice of insurance coverage from Springfield. Mr. Erickson, on behalf of Springfield, testified that the coverage did indeed expire on May 17, 1996.
8. Springfield did not renew its workers compensation insurance policy after it expired on 17 May 1996, nor did it obtain any workers compensation coverage from any other source. Springfield did not provide any certificate of insurance to FCW indicating insurance coverage after 17 May 1996.
9. On 12 June 1996, plaintiff was working for Springfield at a job site to which he was directed by Springfield, and in the process of splicing cable, while on a ladder approximately 18-20 feet above ground, he slipped and fell, sustaining fractures to both feet. Such fall was an unexpected interruption of the work, within the course and scope and arising out of the employment and constituted a compensable injury by accident.
10. Plaintiff was treated initially at Wesley Long Hospital, and subsequently by Dr. Vincent E. Paul, orthopedic surgeon. Surgery was performed by Dr. Paul on the plaintiff's left foot at Cone Hospital on 27 June 1996. Plaintiff was out of work for more than seven days as a result of his compensable injury.
11. Plaintiff notified his employer following his accident, and had several conversations with representatives of Springfield in which he was never advised that Springfield was not insured.
12. Defendants offered into evidence what was alleged to be a copy, or a copy of a copy, of an agreement between Springfield and the plaintiff dated May 2, 1996. Plaintiff testified that he had never signed such an agreement, and that the purported signature was not his. Plaintiff contested the authenticity of the document prior to the hearing, and objected to its admission at the hearing based upon the North Carolina Rules of Evidence. It was improper for the Deputy Commissioner to allow receipt of this document into evidence, under these circumstances.
13. Time Warner Cable, principal contractor, and Travelers Property and Casualty Corporation as workers' compensation carrier for Time Warner Cable, had been parties defendant to this proceeding but the claim as to them was dismissed with prejudice by Deputy Commissioner William Bost on August 14, 1997, upon Motion by such parties and upon showing of a certificate of insurance from FCW showing a workers' compensation policy in force from April 10, 1996 through April 10, 1997.
14. Plaintiff's gross earnings while employed at Springfield were $638.06 for two days in his first work week, and $842.08, $1,380.14, $959.57, respectively, for each subsequent week until he was injured. His wages for 1995 were $22,179.00, although he only worked approximately seven months that year. If his four paychecks from this employer were averaged, they would yield an average weekly wage of $954.56 and a compensation rate of $492 per week, the maximum compensation rate for 1996. If his wages for 1995 were annualized, they would yield an average weekly wage of $731.17 and a 1996 compensation rate from such wages would still be the $492 per week maximum for 1996.
15. Plaintiff was totally disabled from the date of the accident on June 12, 1996 until November, 1996 when he began working on a modified basis at a reduced income. He was not able to return to work at the same level of income until approximately April, 1997. He has permanent impairment to both feet.
16. The hearing before the Deputy Commissioner was concluded with directions from Deputy Commissioner Bost, and consented to by the parties, that the deposition of plaintiff's treating physician, Dr. Vincent E. Paul, would be held in abeyance pending briefs and a decision with respect to the jurisdiction/liability issue.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Giving due regard to the evidence and the reasonable inferences arising therefrom, on 12 June 1996, when the plaintiff was injured, he was an employee of Springfield Communications. N.C. Gen. Stat. § 97-2(1) and § 97-2(2). Mary LouAdams v. AVX Corporation, N.C. Supreme Court No. 151PA98 (31 December 1998), citing Hollman v. City ofRaleigh, 273 N.C. 240, 159 S.E.2d 874 (1968), to the effect that "our Workers' Compensation Act should be liberally construed to effectuate its purpose to provide compensation for injured employees or their dependents, and its benefits should not be denied by a technical, narrow, and strict construction." The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence. Doggett v. South Atl. Warehouse Co.,212 N.C. 599, 194 S.E. 111 (1937), cited with approval inMary Lou Adams v. AVX Corporation, supra.
In reaching a decision as to whether a person is an employee or independent contractor, the North Carolina courts have decided that the common law applies. Youngblood vs. North State FordTruck Sales, 321 N.C. 380, 364 S.E.2d 433, rehearingdenied, 322 N.C. 116, 367 S.E.2d 923 (1988). Various elements or factors are considered in determining the true nature of the relationship, and it has been held that no particular element is controlling, but that each case requires a balancing of the various factors present. See Askew vs. Leonard TireCompany, 264 N.C. 168, 141 S.E.2d 280 (1965) ; Hayes v.Elon College, 224 N.C. 11, 29 S.E.2d 137 (1944). Underlying many of the factors is the presence or absence of how much right of control exists in the relationship, although whether it is actually exercised is not material. See Youngblood v. NorthState Ford Truck Sales, supra.
In this case, plaintiff did not operate any business of his own. Neither at the time he began working for Springfield, nor at any prior time, had he operated as an independent contractor and maintained his own business. He did not have a business name, license, insurance, or any employees. For approximately 18 years he had worked for various companies as a cable installer/splicer. He was skilled, experienced, and did not require detailed instructions or supervision in his work. It was a common practice in the industry that workers such as plaintiff would be paid on a production basis, i.e. a set amount per foot of cable installed or spliced, which is how plaintiff was compensated by Springfield. He worked full time for Springfield, and while employed there, did not work for anyone else. There was no agreement between plaintiff and Springfield that he was to do a particular piece of work or job which was to be completed by a specified date or time, nor was there a contract for a specific lump sum contract price. Under North Carolina law, plaintiff was terminable at will by Springfield, since there was no binding agreement otherwise. That is the ultimate right of control. Weather permitting, the plaintiff showed up for work on a daily basis around 7:00 a.m. to 7:30 a.m. to obtain instructions from Springfield as to where he was to work that day. He was expected to have the work that was assigned to him completed by 5:00 p.m. He was provided with a ladder and all materials and supplies needed on the job, except that he used his own hand tools.
Another very important element of control was present in the relationship between Plaintiff and Springfield. Mr. Erickson testified that Plaintiff and the other workers were reviewed periodically for increases in pay, based upon their work performance. This is the type of job review and pay control that would most likely only be present in an employer/employee relationship. Also, it is interesting to note how Mr. Erickson described his initial conversation when hiring Plaintiff. Mr. Erickson said, "We were discussing the fact that we had a position available, it was temporary, possible permanent position . . . ." This is not the type of description that would apply to a contractor.
When considering the control element, restrictions on working for others should not be present in an independent contracting arrangement. However, in plaintiff's relationship, he was severely restricted. Testimony from both plaintiff and Mr. Erickson indicated that plaintiff could not work for anyone else unless it was approved, and then it could only be on nights and weekends, and not for any other subcontractors working for FCW.
The contract between FCW and Springfield prohibited Springfield from subcontracting any work to others without a written request and written authorization from FCW. Additionally, it required Springfield to have control over its workers and the manner of their work. It appears FCW and Springfield had a strong and binding contractual interest in seeing that Springfield not subcontract work out to others, and that it maintain a high degree of control over its workers. It is simply not credible to accept that Springfield ignored these explicit provisions of its contract with FCW and subcontracted out all of its work with little or no control over the workers. In Youngblood,supra, the court held that the plaintiff was an employee and not an independent contractor where the plaintiff was to provide instruction to the defendant's employees on how to use equipment which the defendant had recently purchased. The plaintiff in that case agreed to do the job for $250.00 per day plus expenses, with no withholding for taxes or benefits; to work for the necessary time it took to instruct the employees of the defendant, up to five days; and to work during the hours that the defendant's employees were present on the job. Tools and assistants were provided by the defendant. Factors which the court relied upon in finding that the plaintiff was an employee in Youngblood, supra, were: (1) that the plaintiff was not paid a lump sum or a fixed contract price, but in units of time; (2) that tools were provided by the defendant; (3) that the plaintiff had no assistants; and (4) that the plaintiff had no business of his own. Additionally, in addressing the overall right of control issue, the court found that the plaintiff was working specific hours, and that the defendant had the right to discharge the plaintiff at any time. The plaintiff was skilled and experienced, and the court stressed that it was the right of control, not the exercise of it, that was important: Where a worker is paid by a unit of time, it may be fairly inferred that he has no legal right to remain on the job until it is completed. The employer may discharge him with no obligation other than to pay for the increments of time already worked.Youngblood, at p. 387.
In Lloyd vs. Jenkins Context Co., 46 N.C. App. 817,266 S.E.2d 35 (1980), the plaintiff was injured while doing carpentry work for the defendant. He was paid $5.00 per hour, kept his own records of time worked, and submitted his records to the defendant for payment. No taxes or social security deductions were withheld. He was skilled and did not require any significant supervision. He was not required to work any specific hours, but usually worked about 40 hours per week. The plaintiff had refused to be put on the payroll, and when injured, told the hospital staff that he was self-employed. In upholding the Industrial Commission's finding that the plaintiff was an employee, the court emphasized the following factors:
1. Paid hourly and not a contract price for a completed job;
2. Was skilled and needed little supervision;
3. Did not have an independent business;
 4. Worked essentially full-time for the defendant and no one else;
 5. Apparently the defendant had the right to discharge at any time;
 6. No evidence that the plaintiff had the right to employ assistants.
In analyzing the case of Mr. Steury, and consideringall factors, as no one factor is determinative, there is compelling evidence that he was an employee and not an independent contractor. The plaintiff did not have an independent business. He was not paid a lump sum f or a completed project, but was paid in units on a production basis. He worked full-time for Springfield and no one else. He was skilled and did not require any close supervision, but his work was checked and reviewed for quality and possible increases in pay. Although the plaintiff used his own hand tools, a ladder and all materials and supplies were furnished by Springfield or its contractors. He was given specific work orders on a daily basis, and followed work hours of being terminated at will by Springfield, and had substantial restrictions from working anywhere else.
Although Springfield claims it was not withholding from Mr. Steury's pay for taxes and social security, it did admit to withholding 25% of his check for various reasons. Even in cases where it was clear that there was no withholding of taxes and social security, courts have held that factor to be significantly overcome by other factors in the relationship, which are present in Mr. Steury's case. See Youngblood, supra; Pearsonvs. Peerless Flooring Company, 247 N.C. 434, 101 S.E.2d 301
(1958).
2. Plaintiff suffered an injury by accident within the course and scope and arising out of his employment with defendant Scott Erickson, doing business as Springfield Communications, for which Scott Erickson is liable as employer and Fiber and Cable Works, Intermediate Contractor, and Travelers Property And Casualty Corporation, Carrier for Fiber and Cable Works are liable pursuant to N.C. Gen. Stat. § 97-19. N.C. Gen. Stat. §97-2(6) and N.C. Gen. Stat. § 97-19. The purpose of N.C.G.S. § 97-19, as stated in Greene v. Spivey, 236 N.C. 435,73 S.E.2d 488 (1952) is as follows:
 The manifest purpose of this section, enacted as an amendment to the original act, is to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on principal contractors, intermediate contractors, or subcontractors, who, presumably being financially responsible, have it within their power, in choosing subcontractors, to pass upon their financial responsibility and insist upon appropriate compensation protection for their workers. It is also the obvious aim of the statute to forestall evasion of the act by those who might be tempted to subdivide their regular operations with the workers, thus relegating them for compensation protection to small subcontractors, who fail to carry, or small enough may not even be required to carry, compensation insurance. Id, at 443.
3. Scott Erickson, dba Springfield Communications, had three or more employees on 12 June 1996 and was required to carry workers' compensation insurance but had no coverage as of that date. N.C. Gen. Stat. § 97-93; Mary Lou Adams v. AVXCorporation, supra, Doggett v. South Atl.Warehouse Co, supra, and Hollman v. Cityof Raleigh, supra.
4. FCW subcontracted work to Springfield without obtaining an appropriate certificate of insurance indicating that Springfield Communications was insured in connection with the subcontract, and failed to obtain any other certificates of insurance or evidence from Springfield that it was maintaining insurance during its performance of the contract. FCW is therefore liable to the plaintiff to the same extent as Springfield Communications. N.C. Gen. Stat. § 97-19 and § 97-93.
The language of N.C. Gen. Stat. § 97-19 plainly states that the principal or intermediate contractor must obtain a Certificate of Insurance from the subcontractor that such subcontractor has complied with N.C. Gen. Stat. § 97-93. The contract between Springfield and FCW contemplated that work by Springfield could be expected to last until December 31, 1996. N.C. Gen. Stat. § 97-93 required Springfield to insure, and keep insured, its liability during the time it was doing work for FCW. It was incumbent upon FCW therefore, in order to satisfy its requirements under N.C. Gen. Stat. § 97-19, to obtain a Certificate of Insurance, or successive renewal certificates, to cover the time that Springfield was doing subcontracting work, in order to be assured that Springfield was insured and remained insured. FCW clearly failed to comply with N.C. Gen. Stat. §97-19. It cannot, and should not, be permitted to avoid liability by merely referring to a Certificate of Insurance that it had received on a prior contract, and which on its face expired a few days from the date of the contract in question. To hold otherwise would ignore the intent and purpose of N.C. Gen. Stat. § 97-19.
5. In order for FCW to be liable to plaintiff it is not required that either Springfield or FCW have three or more employees. N.C. Gen. Stat. § 97-19 renders FCW a "statutory employer," and creates an exception to the general requirement of the Workers' Compensation Act that an employer regularly employ three or more employees in order for liability to attach. SeeCook vs. Norvell-Mackorell Real Estate Company,99 N.C. App. 307, 392 S.E.2d 758 (1990). The language of N.C. Gen. Stat. § 97-19 clearly states that if the subcontractor is uninsured, the party subletting the contract is liable ". . . irrespective of whether such subcontractor has regularly in service fewer than three employees . . ." N.C. Gen. Stat. §97-19. In McGill vs. Bison Fast Freight, Inc., 245 N.C. 469,96 S.E.2d 438 (1957), the Court upheld a claim by a child of a deceased worker against the principal contractor for death benefits when the subcontractor was uninsured and had less than five (now three) employees.
Similarly, there is no requirement in N.C. Gen. Stat. §97-19 that an intermediate contractor such as FCW have a minimum number of employees for liability to attach. Again, N.C. Gen. Stat. § 97-19 creates an exception to the general requirement of three or more employees. See Withers vs.Black, 230 N.C. 428, 53 S.E.2d 668 (1949).
6. Plaintiff is entitled to have Defendants pay for all medical expenses of plaintiff resulting from the injury on 12 June 1996. N.C. Gen. Stat. § 97-25.
7. Plaintiff is entitled to compensation at the rate of $492 per week for all weeks for which he was unable to earn wages, the maximum compensation rate for 1996. Averaging his earnings from this employer yields the same maximum compensation rate as annualizing his prior calendar year income and thus the maximum compensation rate for the year is a fair method. N.C. Gen. Stat. § 97-2(5).
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all of plaintiff's medical bills related to his compensable injury so long as treatment is required and shall reimburse plaintiff for all of his travel expenses and prescription medications related to his compensable injury so long as treatment is required.
2. Defendants shall pay temporary total disability payments of $492 per week to plaintiff for the period June 12, 1996 until November, 1996 when he began working on a modified basis at a reduced income. Defendants shall pay temporary partial disability from November 1996 through April 1997. He has permanent impairment to both feet.
3. The case shall remain open for future determination of permanent partial disability.
4. An attorney fee of 25% of the compensation awarded is hereby approved for Plaintiff's counsel and shall be paid directly to such counsel.
5. The order of exhaustion of this award pursuant to N.C. Gen. Stat. § 97-19 shall be Scott Erickson, the employer, followed by Fiber and Cable Works and its carrier, Travelers Property and Casualty Corporation.
6. Defendants shall pay the costs.
This the 11th day of February 1999.
 S/ _____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________ CHRISTOPHER SCOTT COMMISSIONER
S/ _____________ BERNADINE S. BALLANCE COMMISSIONER