CHARLES YOUNGBLOOD v. NORTH STATE FORD TRUCK SALES AND LIBERTY MUTUAL INSURANCE COMPANY

No. 517A87

(Filed 3 February 1988)

**Master and Servant § 49— workers' compensation—employee rather than independent contractor**

An employment relationship existed between plaintiff and North State at the time of plaintiff's injury where, although plaintiff possessed specialized skill in the use of Kansas Jack equipment, North State retained the right to control the details of plaintiff's work by paying him on a time basis, providing all materials and assistance which he needed, setting his hours of work, and retaining the right to discharge him at any time.

Chief Justice EXUM dissenting.

Justices MEYER and WHICHARD join in this dissenting opinion.

APPEAL by defendants pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 87 N.C. App. 35, 359 S.E. 2d 256 (1987), which affirmed the opinion and award of the Industrial Commission filed 11 August 1986 allowing plaintiff's claim for compensation and medical benefits. Heard in the Supreme Court 9 December 1987.

*Teague, Campbell, Dennis & Gorham, by George W. Dennis III and Linda Stephens, for plaintiff-appellee.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert W. Sumner, for defendant-appellants.*

MARTIN, Justice.

The sole issue for review is whether, with respect to the work in which he was engaged at the time of his injury, plaintiff was an "employee" of defendant North State Ford Truck Sales (North State) within the meaning of the Workers' Compensation Act. We conclude that he was North State's employee and accordingly affirm the Court of Appeals.

Plaintiff was seriously injured and permanently disabled on 23 July 1984 while instructing defendant North State's employees in the use of Kansas Jack equipment to repair the frames of heavy vehicles. The compensation hearing was limited by stipula-

tion to a determination of plaintiff's employment status. The deputy commissioner received the following essentially uncontroverted evidence:

At the time of the injury, plaintiff was a self-proclaimed "specialist" in the use of Kansas Jack frame-straightening equipment and one of only three or four persons in the region qualified to teach others how to use it. Plaintiff had developed this skill and knowledge while operating his own tractor-trailer repair shop from 1973 to 1983. He used Kansas Jack equipment for frame-straightening jobs and on occasion helped a Kansas Jack field representative to demonstrate the equipment to prospective buyers. In late 1983 plaintiff closed the repair shop and became an independent sales agent for Interstate Marketing Corporation (IMC). Under the arrangement with IMC, plaintiff sold Kansas Jack frame and measuring equipment in a sixteen-county sales territory encompassing parts of Georgia and Tennessee.

For each of his sales, plaintiff was responsible for installing the equipment at the purchaser's place of business and training the purchaser's employees in the use of the equipment. Over the course of his relationship with IMC, plaintiff conducted ten to twelve such training sessions in connection with Kansas Jack sales. He received no salary or benefits from IMC and was paid on a strictly commission basis. On one occasion, IMC hired plaintiff as an "employee" to conduct a Kansas Jack workshop for which he was paid $250 per day. This was the only occasion on which plaintiff conducted a training session that was unconnected to a personal sale.

In July of 1984, defendant North State purchased some secondhand Kansas Jack frame-straightening equipment. Because its employees were not familiar with the equipment, North State contacted the Kansas Jack representative for the North Carolina sales territory and requested the name of a qualified instructor for on-site training. The representative recommended plaintiff for the job. Alan Chapman, North State's body shop manager, then negotiated with plaintiff by telephone. Plaintiff agreed to travel to Raleigh to train North State's employees on the equipment during the week of 23 July 1984. Under the agreement, plaintiff was to receive $250 per day plus expenses, "for as many or as few days as it would take." The instruction could last up to five days,

depending on the trainees' progress. Mr. Chapman advised plaintiff that he was to follow the normal work schedule, instructing the trainees between the hours of 7:30 a.m. and 4:30 p.m., with a lunch break from noon until 1:00 p.m. He rejected plaintiff's suggestion that the training continue at night because he did not want to pay plaintiff and the trainees overtime. He assured plaintiff that North State would supply any necessary equipment or assistance.

Plaintiff arrived at North State on the morning of 23 July 1984 in a Kansas Jack panel truck which IMC had made available for  his personal use. Plaintiff was not asked to sign an employment application, and no arrangements were made for standard employee benefits or the withholding of taxes. Mr. Chapman had the body shop employees lay the Kansas Jack equipment out on the floor. He told plaintiff he wanted the workers to have "hands-on" training that day and showed plaintiff which trucks to repair during the instruction process.

The evidence diverged somewhat as to the degree of supervision exercised by Mr. Chapman. Plaintiff testified that Mr. Chapman gave him instructions as to how the trainees should be taught. He was present during most of the morning instructional session, and during the lunch break he discussed with plaintiff what had gone on that morning and what he wanted plaintiff to do that afternoon. He then participated to some extent in the afternoon hands-on training by telling the trainees "what to do." Plaintiff further testified that he left it up to Mr. Chapman to determine when his employees were comfortable enough with the equipment to terminate the training. He was prepared to leave early in the week if Mr. Chapman determined that he was no longer needed.

Mr. Chapman testified to the contrary that although he had checked on the trainees' progress several times, he did not attempt to supervise the training in any way. He himself had no knowledge of the equipment and left the methods of instruction entirely to plaintiff's discretion.

Plaintiff's injury occurred during the afternoon hands-on training session when a chain snapped and struck him in the neck. Plaintiff suffered fractured vertebrae, resulting in quadriplegia, and amassed medical bills of approximately $300,000. Defendant

North State paid plaintiff $375.56 for one day's work plus travelling expenses. Defendant insurance carrier refused to pay medical expenses or disability compensation.

Based on the foregoing, the deputy commissioner found that plaintiff had an "independent calling" to teach the use of Kansas Jack equipment and that defendant North State had no right of control over plaintiff's teaching methods. He concluded that plaintiff was an independent contractor not subject to the provisions of the Workers' Compensation Act at the time of the injury and dismissed the claim for lack of jurisdiction. The full Commission, with one member dissenting, reversed this determination, finding that North State had retained the right to control the details of plaintiff's work and concluding that plaintiff was North State's employee. A divided panel of the Court of Appeals affirmed. Defendant appealed to this Court pursuant to N.C.G.S. § 7A-30(2).

To be entitled to maintain a proceeding for workers' compensation, the claimant must be, in fact and in law, an employee of the party from whom compensation is claimed. *Hicks v. Guilford County*, 267 N.C. 364, 148 S.E. 2d 240 (1966); *Hart v. Motors*, 244 N.C. 84, 92 S.E. 2d 673 (1956). The issue of whether the employer-employee relationship exists is a jurisdictional one. *Lucas v. Stores*, 289 N.C. 212, 221 S.E. 2d 257 (1976); *Askew v. Tire Co.*, 264 N.C. 168, 141 S.E. 2d 280 (1965). An independent contractor is not a person included within the terms of the Workers' Compensation Act, and the Industrial Commission has no jurisdiction to apply the Act to a person who is not subject to its provisions. *Richards v. Nationwide Homes*, 263 N.C. 295, 139 S.E. 2d 645 (1965).

Findings of jurisdictional fact made by the Industrial Commission are not conclusive, even when supported by competent evidence. It is incumbent upon this Court to review the evidence of record and make independent findings of fact with regard to plaintiff's employment status. *Lemmerman v. Williams Oil Co.*, 318 N.C. 577, 350 S.E. 2d 83 (1986); *Lucas v. Stores*, 289 N.C. 212, 221 S.E. 2d 257; *Askew v. Tire Co.*, 264 N.C. 168, 141 S.E. 2d 280.

Whether one employed to perform specified work for another is to be regarded as an independent contractor or as an employee within the meaning of the Act is determined by the application of ordinary common law tests. *Richards v. Nationwide Homes*, 263

N.C. 295, 139 S.E. 2d 645; *Scott v. Lumber Co.*, 232 N.C. 162, 59 S.E. 2d 425 (1950). An independent contractor is defined at common law as one who exercises an independent employment and contracts to do certain work according to his own judgment and method, without being subject to his employer except as to the result of his work. *Cooper v. Publishing Co.*, 258 N.C. 578, 129 S.E. 2d 107 (1963); *McCraw v. Mills, Inc.*, 233 N.C. 524, 64 S.E. 2d 658 (1951). Where the party for whom the work is being done retains the right to control and direct the manner in which the details of the work are to be executed, however, it is universally held that the relationship of employer and employee is created. *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137 (1944); 1C A. Larson, *The Law of Workmen's Compensation* § 44.00 (1986).

We have on innumerable occasions discussed this distinction, and over the course of the years we have identified the specific factors which are ordinarily indicative of whether or not such control has been retained. *See, e.g., Pearson v. Flooring Co.*, 247 N.C. 434, 101 S.E. 2d 301 (1958); *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137.

Having carefully reviewed the testimony and exhibits in this case, we find that the following pertinent factors have been established by the greater weight of the evidence. Each of these factors tends to show that North State retained the right to control the details of plaintiff's work, incident to an employment relationship.

1. North State agreed to pay plaintiff $250 per day plus expenses. Payment of a fixed contract price or lump sum ordinarily indicates that the worker is an independent contractor, *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137, while payment by a unit of time, such as an hour, day, or week, is strong evidence that he is an employee, 1C A. Larson, *The Law of Workmen's Compensation* § 44.33(a); *Pearson v. Flooring Co.*, 247 N.C. 434, 101 S.E. 2d 301; *Smith v. Paper Co.*, 226 N.C. 47, 36 S.E. 2d 730 (1946).

2. North State assured plaintiff that it would provide all necessary tools, equipment, and assistance for the job. The freedom to employ such assistants as the claimant may think proper indicates contractorship. *McCraw v. Mills, Inc.*, 233 N.C. 524, 64 S.E. 2d 658 (painting contractor free to use as

many or as few workers as he saw fit, with full control over them as to hiring, firing, wages, hours, times and places); *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137. A lack of this freedom indicates employment. *Pearson v. Flooring Co.*, 247 N.C. 434, 101 S.E. 2d 301; *Lloyd v. Jenkins Context Co.*, 46 N.C. App. 817, 266 S.E. 2d 35 (1980). Furthermore, when valuable equipment is furnished to the worker, the relationship is almost invariably that of employer and employee. 1C A. Larson, *The Law of Workmen's Compensation* § 44.34(a).

3. North State required plaintiff to perform his work between the hours of 7:30 a.m. and 4:30 p.m. with a lunch break at noon. This constituted a direct exercise of control. Where the worker himself selects the time of performance, contractorship is indicated. *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137. However, where the worker must conform to a particular schedule and perform his job only during hours when the defendant's employees are available, the relationship is normally one of employment. *Pearson v. Flooring Co.*, 247 N.C. 434, 101 S.E. 2d 301; *see also Morse v. Curtis*, 276 N.C. 371, 172 S.E. 2d 495 (1970) (claimant required to perform her supervisory duties during set hours).

4. North State retained the right to discharge plaintiff for any reason. The right to fire is one of the most effective means of control. *Lassiter v. Cline*, 222 N.C. 271, 22 S.E. 2d 558 (1942). An independent contractor is subject to discharge only for cause and not because he adopts one method of work over another. *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137; *Lassiter v. Cline*, 222 N.C. 271, 22 S.E. 2d 558. An employee, on the other hand, may be discharged without cause at any time. *See Scott v. Lumber Co.*, 232 N.C. 162, 59 S.E. 2d 425. Where a worker is to be paid by a unit of time, it may be fairly inferred that he has no legal right to remain on the job until it is completed. The employer may discharge him with no obligation other than to pay wages for the units of time already worked. *Pearson v. Flooring Co.*, 247 N.C. 434, 101 S.E. 2d 301.

No particular one of these factors is decisive in itself. Each is but a sign which must be considered with all other indicia and circumstances to determine the true status of the parties. *Askew v.*

*Tire Co.*, 264 N.C. 168, 141 S.E. 2d 280; *Pressley v. Turner*, 249 N.C. 102, 105 S.E. 2d 289 (1958); *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137. We look to our previous decisions for guidance in the weighing of these factors.

Although there are no two cases which are factually identical in this area of the law, *Pearson v. Flooring Co.*, liberally cited herein, is strikingly similar to the case at bar in many key respects. In that case, defendant Peerless Flooring Company purchased equipment from Moore Dry Kiln Company. Moore recommended claimant Pearson as an experienced mechanic who could supervise the equipment's installation on Peerless's premises. An agreement was reached whereby Peerless would provide workers and equipment and Pearson would supervise the installation. Pearson was to receive $2.25 per hour plus expenses. During the installation, Pearson worked only when Peerless's employees were available, according to Peerless's regular schedule.

In holding that Pearson was Peerless's employee, we found each of the factors that we have enumerated in this case. We conclude that the peculiar combination of factors here weigh just as heavily on the side of employment as in the closely analogous *Pearson*. Furthermore, we note that the four factors found in this case correspond to the four principal factors generally recognized as demonstrating the right to control details of the work: (1) method of payment; (2) the furnishing of equipment; (3) direct evidence of exercise of control; and (4) the right to fire. *See* 1C A. Larson, *The Law of Workmen's Compensation* § 44.00.

Defendants argue that *Pearson* analogy notwithstanding, plaintiff must be categorized an independent contractor because his experience and expertise with Kansas Jack equipment (1) established an independent calling, business, or occupation as a Kansas Jack instructor, and (2) prevented North State from exercising meaningful supervision over his work. We disagree.

The evidence clearly shows that plaintiff made his living as a *salesman* of Kansas Jack equipment, not as an instructor. Although he often conducted training sessions incident to a sale, he did not seek work as a "free-lance" instructor, nor did he advertise or hold himself out as such. On only one other occasion had he conducted a training session independent of a personal sale. We find this evidence insufficient to establish an independent call-

ing in this case. *See Askew v. Tire Co.*, 264 N.C. 168, 141 S.E. 2d 280 (claimant, a painter of long experience, did not hold himself out as painting contractor and had only once done painting for lump sum); *Durham v. McLamb*, 59 N.C. App. 165, 296 S.E. 2d 3 (1982) (claimant did not advertise his services as a carpenter and did not have a business as a contractor in that trade); *Lloyd v. Jenkins Context Co.*, 46 N.C. App. 817, 266 S.E. 2d 35 (although claimant was skilled at his work, he did not have an independent business as a carpenter).

Moreover, the fact that a claimant is skilled in his job and requires very little supervision is not in itself determinative. *Durham v. McLamb*, 59 N.C. App. 165, 296 S.E. 2d 3; *Lloyd v. Jenkins Context Co.*, 46 N.C. App. 817, 266 S.E. 2d 35. If the employer has the right of control, it is immaterial whether he actually exercises it. *Hinkle v. Lexington*, 239 N.C. 105, 79 S.E. 2d 220 (1953); *Scott v. Lumber Co.*, 232 N.C. 162, 59 S.E. 2d 425. Nonexercise can often be explained by the lack of occasion for supervision of the particular employee, because of his competence and experience. 1C A. Larson, *The Law of Workmen's Compensation* § 44.32. The fact that plaintiff was a specialist in the use of Kansas Jack equipment and had extensive experience in training others how to use it does not imply that North State lost its right to control plaintiff's conduct and to intervene if his instruction interfered with North State's other operations. *Pearson v. Flooring Co.*, 247 N.C. 434, 101 S.E. 2d 301.

We conclude that although plaintiff possessed specialized skill in the use of Kansas Jack equipment, North State retained the right to control the details of plaintiff's work by paying him on a time basis, providing all materials and assistance which he needed, setting his hours of work, and retaining the right to discharge him at any time. An employment relationship therefore existed between plaintiff and North State at the time of plaintiff's injury. The decision of the Court of Appeals is

Affirmed.

Chief Justice EXUM dissenting.

I respectfully dissent. My review of the evidence, when viewed in light of the controlling authorities, leads me to conclude

Youngblood v. North State Ford Truck Sales

that plaintiff was an independent contractor at the time of the injury.

The evidence as recited by the majority is, for the most part, fair and complete. I would emphasize the following facts. (1) In the plaintiff's capacity as a seller of Kansas Jack equipment he trained the buyers' employees in the equipment's use. He had done this on at least ten occasions before being injured at North State Ford. (2) Because of his expertise with the equipment he gained a reputation as one of only three or four individuals in the southeast competent to instruct buyers of Kansas Jack truck frame straightening equipment. (3) Plaintiff specified the amount he wanted to be paid per day, and defendant, although believing the figure high, agreed to his terms. (4) Plaintiff specified the time usually necessary to complete the training course and then confined defendant to selecting a period suitable for plaintiff's schedule.

I disagree with the majority's discussion of the evidence with regard to two issues. (1) The majority states that plaintiff retained "the right to discharge [defendant] at any time." I find the evidence unclear on this issue because the record is entirely silent with regard to the right to fire. Thus, the majority simply assumes that this right was retained, while I find such an assumption does not necessarily follow. (2) The majority indicates that plaintiff lacked the freedom to employ assistants he thought necessary to conduct the training course. Once again, the evidence is silent regarding whether plaintiff had such freedom. The evidence merely indicates that whatever materials plaintiff deemed necessary defendant would provide. Defendant thus gave plaintiff wide latitude to steer whatever course necessary to accomplish the ultimate objective of instructing North State employees regarding the proper method of using Kansas Jack equipment.

The majority correctly notes that the test for distinguishing an independent contractor from an employee centers on whether the party for whom the work is being done retains the right to control and direct the manner in which the details of the work are to be executed. When this right is retained the relationship of employer and employee is created. When it is not, the party performing the task is characterized as an independent contractor. Certain factors are normally assessed to facilitate the application

of this test. We enumerated these factors in *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137 (1944). According to *Hayes*, a person is an independent contractor when:

> The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*Hayes*, 224 N.C. at 16, 29 S.E. 2d at 140. As the majority acknowledges, no factor is determinative in itself; rather they cumulatively shed light on the court's ultimate task of determining the extent to which the party for whom the work was performed retained the right to control the details by which it was done.

My review of the factors enumerated in *Hayes* leads me to conclude that plaintiff was an independent contractor.

Concerning the first *Hayes* factor, it seems clear that plaintiff was engaged in an independent business. Although characterized as a "salesman," the evidence shows that his job description included training those who purchased equipment. It was plainly because of his reputation as a training specialist that North State contacted him in the first place. Thus, notwithstanding his official designation as a salesman, plaintiff had an independent calling which included instructing others in the use of Kansas Jack equipment.

Regarding whether plaintiff had the independent use of his special skill in conducting the training course, the evidence is somewhat conflicting. The more credible evidence, I believe, is the testimony of Mr. Chapman who stated that because of his lack of familiarity with the Kansas Jack equipment he left the methods of instruction entirely to plaintiff's discretion. This testimony is corroborated by the fact that Mr. Chapman turned over his men to plaintiff for the training course. Although Mr. Chapman instructed plaintiff to conduct "hands-on" training, this does not

amount to "control" by defendant, for such an instruction had no bearing on how plaintiff conducted the course in detail. As Professor Larson notes:

> An owner who wants to get the work done without becoming an employer is entitled to as much control of the details of the work as is necessary to ensure that he gets the end result from the contractor that he bargained for. In other words, there may be a control of the quality or description of the work itself, as distinguished from control of the person doing it, without going beyond the independent contractor relation.

1C Larson, *Workmen's Compensation Law*, § 44.20.

The third *Hayes* factor has two components: a specified piece of work, and the method of compensation. North State engaged plaintiff to perform a specific task; *viz.*, to instruct North State Ford employees how to use Kansas Jack equipment. Plaintiff himself established the method and amount of compensation, $250.00 a day, perhaps because he was unsure whether the course would last four or five days. While, as the majority points out, Professor Larson indicates in his treatise that payment by a unit of time, such as a day, may be indicative of an employment relationship, common experience reveals this is not always the case. Expert witnesses and consultants to businesses, for instance, are normally paid on a daily basis, yet no one, for this reason alone, would characterize them as the employees of the organization paying their daily fee. I believe, in the context of the instant case, plaintiff's decision to demand a specified fee per day evinces the kind of independence normally associated with independent contractors.

Regarding the conditions under which the plaintiff could have been discharged, I have already noted my disagreement with the majority. The record is simply silent on this point. I think that the manner in which plaintiff conducted the course before the accident indicates he would not have been subject to discharge had he selected a different method for conducting the training session. Indeed, the evidence indicates that Mr. Chapman turned the entire training course over to plaintiff, thus giving him complete rein to instruct the North State employees however he saw fit.

The final *Hayes* factors also tend to suggest that plaintiff was an independent contractor. North State did not employ him regularly. He was entirely free to utilize the resources available at North State. The fact that North State made such resources available, rather than requiring plaintiff to acquire his own, should not be understood as the kind of limitation on his freedom which might otherwise be indicative of an employment relationship.

Finally, plaintiff's duty to conduct the training course during the hours when the North State employees were at work is not, in the context of the task he contracted to perform, sufficient control by North State to justify the conclusion that he was an employee. North State, legitimately, did not want to pay its employees overtime to learn how to use Kansas Jack equipment. Its reasonable request that plaintiff train its employees during regular working hours should not be construed to alter his independent contractor status.

The decision upon which the majority relies most heavily, *Pearson v. Peerless Flooring Co.*, 247 N.C. 434, 101 S.E. 2d 301 (1957), differs from the instant case in several important respects. In *Pearson* the Court relied heavily on the fact that the defendant agreed in a contract with the manufacturer that the person installing the equipment would be defendant's employee. While the Court did not consider this contract dispositive of the issue, it constituted strong evidence that the defendant itself considered plaintiff as its employee. Another way in which *Pearson* differs from the present case is that the task involved required significantly less skill, and therefore permitted significantly more control, than the task in the instant case. In *Pearson* the defendant's control over the details of the dry kiln's installation is reflected in the constant supervision defendant exercised, as well as the occasion when the defendant made the plaintiff change the location of a pipeline in the kilns from the location which was called for in the plans and specifications. Finally, the method of payment in *Pearson* was an hourly wage rather than a *per diem* compensation. I consider this last difference meaningful because an hourly wage is the kind of compensation most frequently associated with an employment relationship. Payment by the day is not. Because of this, and the other differences noted, I do not believe *Pearson* controls this case.

It should be acknowledged that distinguishing between an independent contractor and an employee in a given case often gives rise to disagreements between reasonable minds. The opposing opinions at every appeal in the present case illustrate this. My judgment is that the deputy commissioner correctly concluded that plaintiff was an independent contractor, and that the Industrial Commission therefore lacked jurisdiction over his claim. The Court of Appeals should be reversed and the case remanded with instructions that the plaintiff's claim be dismissed.

Justices MEYER and WHICHARD join in this dissenting opinion.