Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** MOTION
On 25 July 2001, defendants filed a Motion to Modify Pretrial Agreement in this case. In the Pretrial Agreement, executed by the parties at the hearing before the Deputy Commissioner, the parties stipulated that plaintiff was `subject to and bound by the North Carolina Workers' Compensation Act.' Defendants now seek for the first time on 12 July 2001 after oral arguments before the Full Commission to amend that stipulation in the Pre-trial Agreement to read that `defendant Paxton Media Group is subject to and bound by the North Carolina Workers' Compensation Act in that it employs three or more employees.' Defendants' motion is ALLOWED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The date of injury which is the subject of this claim, is 14 March 1999.
2. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
3. Defendant Paxton Media Group is subject to and bound by the North Carolina Workers' Compensation Act in that it employs three or more employees.
4. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
5. Kemper Insurance Company was the carrier on the risk. The parties at the hearing submitted a Pre-Trial Agreement dated 15 August 2000. The documents attached to the Pre-Trial Agreement were stipulated into evidence.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and based upon all of the competent evidence in the record, enters the following:
 FINDINGS OF FACT
1. Plaintiff, who was 65 years old at the time of the hearing before the Deputy Commissioner and a high school graduate, began delivering newspapers for the Monroe Enquirer in May 1998. She was assigned to route 117. Shortly after agreeing to take route 117, plaintiff made arrangements for her daughter to sign up for route 120, which plaintiff intended to drive. Plaintiff wanted the contract and payments for route 120 to be made in her daughter's name so that plaintiff would not exceed the maximum earning limit for her social security retirement benefits. Consequently, the publisher paid Theresa Owenby, plaintiff's daughter, for delivering the newspapers on that route and Ms. Owenby paid plaintiff. Defendant had on record that plaintiff was the driver on Route 120. The contracts signed by plaintiff (signed on 25 April 1998 for Route 117) and her daughter (signed on 28 April 1998 for Route 120) were virtually identical.
2. At approximately 3:30 a.m. on 14 March 1999, plaintiff was delivering newspapers on route 120 with the help of a friend when another vehicle collided head on with their vehicle. As a result of the accident, plaintiff sustained serious injuries. She had not returned to work by the date of hearing before the Deputy Commissioner, which was over a year later.
3. Plaintiff and her daughter each signed a contract prepared by the publisher entitled `Independent Contractor Distributor Sales Agreement.' The contract required plaintiff to obtain newspapers from the publisher at a designated place and deliver newspapers to each subscriber on the route by 6:00 a.m. on weekdays and by 7:00 a.m. on weekends. Plaintiff was provided with a number of papers sufficient to satisfy the subscriber list, including newspaper racks on the route. Plaintiff was not given any extra newspapers to sell on her own, and the price plaintiff could collect for the papers was decided by the publisher. The list of subscribers was provided by the publisher, and plaintiff's contact with those subscribers was limited to the delivery of the publisher's product. The publisher expressly retained the sole property rights to the records of subscribers on any given route. If plaintiff did not intend to deliver the newspapers on any given day, she was required to hire a substitute driver to accomplish the delivery. This requirement was reiterated in a memorandum entitled `Substitute Services' issued to all carriers by defendant in which the carrier assigned to a route was notified of their responsibility for obtaining substitute delivery personnel at any time they could not or chose not to deliver the papers personally. Plaintiff was required to provide her own transportation for the delivery of the papers. Plaintiff was also required to provide her own supplies, including rubber bands and plastic bags to cover the newspapers; however, the publisher offered these items for sale to carriers. The contract also required that plaintiff purchase the papers from the publisher at a rate reduced from the cover price, and then earn the difference for each paper sold. In practice, however, the publisher paid plaintiff a set amount for the newspapers delivered and plaintiff was not responsible for collecting money from the subscribers. In those cases where the subscriber left money for the publisher in the newspaper delivery box, plaintiff was responsible for forwarding the payment to the publisher. In the case of newspaper racks on her route, plaintiff kept the money placed in the rack by customers but the newspaper deducted her designated cost for each newspaper sold from her paycheck. There was also a free paper delivered to non-subscribers on Wednesdays and she was paid two cents each to deliver those.
4. When plaintiff delivered papers under her daughter's contract for Route 120, she was bound by the same contract terms that applied to her contract for Route 117.
5. The publisher did not withhold taxes or other deductions from plaintiff's paycheck and reported plaintiff's earnings to the Internal Revenue Service by a 1099. When she filed her tax return, plaintiff showed herself as self-employed.
6. Plaintiff drove her daughter's car while delivering newspapers and paid for fuel and other related expenses. She picked up the newspapers from the publisher between 1:00 and 4:00 in the morning and made the deliveries on a timely basis. A friend sometimes helped her with the routes by driving or putting the papers in the boxes.
7. The number of subscribers on each route was controlled by the publisher, as was the price of each newspaper and plaintiff's share thereof. The publisher expressly reserved the right to change the boundaries of each route at its discretion. Plaintiff had no control over the income generated by a route, which the Full Commission deems tantamount to paying the carrier a wage, as opposed to the carrier selling a service to the publisher at a bargained for price. Further, while either party could terminate the contract without cause upon 30 days written notice, the publisher reserved the right to terminate the contract without notice upon the occurrence of a number of factors, including any failure by the carrier to perform according to the standards set by the publisher under the contract, or receipt by a carrier of more than 25 customer complaints per thousand newspapers delivered.
8. Because plaintiff's daughter contracted to deliver papers on Route 120 upon which plaintiff was injured, plaintiff was, in effect, working as a carrier for her daughter at the time of her injury. Defendant had notice of this arrangement, which was in accordance with the contractual agreement and the memorandum of Substitute Services issued by defendant.
9. For the reasons stated above, defendant controlled the manner in which the details of plaintiff's work were executed.
10. Based upon the greater weight of the evidence, plaintiff was an employee of defendant employer at the time of her injury. Plaintiff's injury arose out of and in the course of her employment and constituted an injury by accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to claim workers' compensation benefits, the claimant `must be, in fact and in law, an employee of the party from whom compensation is claimed.' Youngblood v. North State Ford Truck Sales,321 N.C. 380, 383, 364 S.E.2d 433, 437 (1988).
2. An independent contractor is one who contracts to perform a task pursuant to an independent employment and according to his own judgment and method. Hayes v. Elon College, 224 N.C. 11, 29 S.E.2d 137 (1944). Conversely, an employer-employee relationship exists when the employer retains control over the manner in which the details of the work are executed as opposed to merely requiring certain definite results under the contract. Id.
3. Factors which are considered indicative of the existence of an employment relationship include: (1) method of payment, (2) furnishing of equipment, and (3) direct evidence of the exercise of control.Youngblood, 321 N.C at 384-85, 364 S.E.2d at 437-38.
4. In this case, plaintiff was paid a set rate established by the publisher for the delivery of a number of newspapers also set by the publisher. Plaintiff had no power to negotiate the income provided by a given route; therefore, plaintiff's payment by the publisher constitutes a wage rather than a bargained for contract price for services rendered. Plaintiff obtained no rights to the list of subscribers provided by the publisher. The publisher retained the right to terminate the contracts without notice. While plaintiff provided her own automobile for the purpose of delivering the publisher's product, this was not a requirement of the job. Plaintiff could have used a bicycle or traveled on foot, so long as the papers were delivered according to the publisher's schedule. The fact that plaintiff and her daughter were permitted to hire their own assistants in performing their duties is not determinative of independent contractor status. See Evans v. Dare Lumber Co., 174 N.C. 31, 93 S.E. 430
(1917). The fact that plaintiff's job was based upon maintaining a satisfied subscriber base, it appears from the contract that the publisher retained the right to control the manner of plaintiff's delivery sufficient to meet any subscriber demands that the publisher deemed reasonable. See Cooper v. Asheville Citizen-Times Publishing Co., Inc.,258 N.C. 578, 129 S.E.2d 107 (1963). Lastly, the services plaintiff was required to provide were routine in nature, lacking a need for discretion or skill. The day to day delivery of newspapers under a cancelable agreement of indefinite duration may not be considered a specific contractual job for the purposes of defining status as an independent contractor. Id. Therefore, at the time of plaintiff's injury by accident on 14 March 1999, plaintiff was an employee of the publisher and not an independent contractor.
5. On 14 March 1999, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
6. Because this claim was bifurcated at the hearing before the Deputy Commissioner and the only contested issue being addressed herein is whether plaintiff was an employee of defendant-employer or an independent contractor, this claim must be remanded to the Deputy Commissioner for the taking of evidence on the extent and duration of plaintiff's disability, if any.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. The Industrial Commission has jurisdiction over plaintiff's claim and plaintiff's claim for workers' compensation benefits is hereby ALLOWED.
2. This claim is remanded to a deputy commissioner for the taking of evidence as to the amount and duration of disability compensation to which plaintiff is entitled under the Act.
3. No costs are assessed at this time.
This the ___ day of October, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER