***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties before the hearing in a Pre-Trial Agreement, at the hearing before the deputy commissioner and following the hearing before the deputy commissioner as:
 STIPULATIONS
1. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
2. The parties dispute whether an employment relationship existed between plaintiff-employee, James Reynolds, and defendant-employer, M 
M Contracting.
3. AmComp Assurance Corporation was the insurer for M M Contracting at the time of the injuries on June 6, 2001.
4. Employee's average weekly wage has not been stipulated and is an issue in this matter.
5. Plaintiff claims injury to the left eye, eyelids, head and skull. The date of the injury is June 6, 2001. Plaintiff contends that he was completely unable to earn wages in employment from that date until November 12, 2001.
6. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of plaintiff's medical records.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was a 35-year-old male born November 14, 1966. Plaintiff graduated from high school. After graduation plaintiff worked as a mason for approximately five years. Thereafter, he moved to North Carolina and began painting, performing primarily commercial painting. Plaintiff at the time of the hearing before the deputy commissioner had been a painter for approximately twelve years. Plaintiff's work history is exclusively in the construction industry.
2. Defendant, M M Contracting, is a general contractor owned and operated by Bob Melvin.
3. In late May 2001, plaintiff was working with Terry King performing siding work for Bob Melvin. Plaintiff and another man, Jake Toley, assisted Terry King performing the siding for approximately two weeks preceding June 6, 2001. Plaintiff worked on approximately two houses with Terry King and received $10.00 in cash per hour. Terry King was paid directly by Mr. Melvin and then paid plaintiff.
4. Plaintiff was approached by Mr. Melvin about painting the interior of two homes. Plaintiff had previous experience as a painter and had his own spray kit. After walking through the houses, a price of $1,200.00 per house was agreed upon.
5. Plaintiff planned to have Terry King and Jake Toley help him with the painting, and estimated that each house would take five days paying each of them $400.00 per week per house.
6. Mr. Melvin supplied the paint, caulking and sand paper.
7. Mr. Melvin did not tell plaintiff, Mr. King or Mr. Toley how to paint the house. Instead, he told them that he wanted it done well and as soon as possible.
8. Mr. Melvin did not ask plaintiff, Mr. King or Mr. Toley to sign an independent contractor agreement. Mr. Melvin testified that he did obtain a certificate of insurance from Terry King, but testified that he was unable to find the certificate. Mr. Melvin did not obtain a certificate of insurance from plaintiff. All supplies were provided by Mr. Melvin except the paint sprayer and a six-foot ladder.
9. On the morning of June 6, 2001, plaintiff, Mr. Toley and Mr. King left Mt. Airy to go to Winston-Salem where the houses were located. Before leaving Mt. Airy, plaintiff purchased 50 feet of new hose and rented a spray gun at Horizon Rental. Plaintiff had his own sprayer machine. Thereafter, they went directly to Lowe's in Winston-Salem to purchase paint. Terry King signed on Mr. Melvin's account for the purchase of the materials.
10. Thereafter, plaintiff, Mr. Toley and Mr. King proceeded to the job site and prepared it for painting.
11. In the process of preparing the paint gun for painting, plaintiff started to pick it up, the hose went off in his face, and the paint exploded into his left eye.
12. Plaintiff was taken immediately to the Forsyth emergency room. Thereafter, plaintiff was transferred to North Carolina Baptist Hospital for treatment.
13. Plaintiff was treated by Dr. Richard Weaver, an ophthalmologist, who indicated that the force of the paint from the paint sprayer injected the paint in and around the eyeball and back through the optic canal into plaintiff's brain. Dr. Weaver is of the opinion that plaintiff's loss of vision is a result of the force of the impact of the paint and air into plaintiff's eye. Dr. Weaver is of the opinion that plaintiff has no distance perception and is completely blind in the left eye.
14. Dr. Weaver is of the opinion that plaintiff has difficulty around machinery and equipment because he cannot judge distance and that plaintiff should avoid ladders and scaffolds. Dr. Weaver recommends that plaintiff avoid working in the construction industry.
15. Plaintiff was also treated by Dr. Chadwick Brasington, an ophthalmologist. Dr. Brasington was of the opinion that plaintiff only has vague light perception in his left eye and is worse than 20/400 and falls off the Snellen chart. In other words, plaintiff has no functional level of vision in his left eye.
16. Dr. Brasington is of the opinion that plaintiff's condition will not improve.
17. Dr. Brasington is of the opinion that plaintiff may require future surgery to eviscerate or enucleate because of plaintiff's pain or because of his appearance concerns. Plaintiff also has permanent facial scarring and drooping of the left eye as a result of the June 6, 2001 injury.
18. Dr. Brasington is of the opinion that plaintiff's depth perception is significantly impacted by having only one eye and that this condition is permanent. Dr. Brasington recommends that plaintiff have polycarbonate lenses, which are impact resistant, for the rest of his life.
19. Plaintiff was unable to work at the same or any other job from June 6, 2001 until approximately November 12, 2001 when he returned to work.
20. The undersigned do not accept as credible that plaintiff was intoxicated on June 6, 2001, and there is no evidence that such intoxication, if such had been found, contributed to plaintiff's injury.
21. On June 6, 2001, plaintiff was not an employee of defendant-employer.
22. On June 6, 2001, plaintiff was not an employee of Terry King.
23. On June 6, 2001, plaintiff was either a single independent contractor or a co-independent contractor with Terry King.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 6, 2001, plaintiff was either a single independent contractor or a co-independent contractor with Terry King and therefore is not entitled to workers' compensation benefits. N.C. Gen. Stat. §97-2(2).
2. The Industrial Commission does not have jurisdiction of this claim pursuant to N.C. Gen. Stat. § 97-19; Youngblood v. North State Ford TruckSales, 321 N.C. 380 (1988). Plaintiff's claim must, therefore, be dismissed.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim must be, and the same is hereby, DISMISSED for lack of jurisdiction.
2. Each side shall pay its own costs; however, defendants shall pay an expert witness fee in the amount of $240.00 to Dr. Brasington.
This the 17th day of April 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER