***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing parties have shown good grounds to reconsider the evidence. Having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Baddour.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. Southeastern Cable is subject to the Workers' Compensation Act but has denied that plaintiff was an employee of Southeastern Cable.
3. Southeastern Cable was insured on August 13, 2007 by Companion Property Casualty. If plaintiff is found by the Commission to have been an employee of Southeastern Cable, then Companion Property and Casualty is the carrier on the risk for plaintiff's injury by accident on August 13, 2007.
 *********** EXHIBITS
1. The following exhibits were submitted into evidence before the Deputy Commissioner:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Medical Records
 (c) Stipulated Exhibit 3: Indexed and Paginated Set of Exhibits Submitted Post Hearing
 (d) Stipulated Exhibit 4: Income Earned by Plaintiff during Employment (Revised Stipulation Filed March 30, 2009)
 (e) Plaintiff's Exhibit 1: Subpoena
2. The deposition of Dr. James A. Nunley, II was submitted into evidence before the Deputy Commissioner.
 *********** ISSUES
1. Whether plaintiff was an employee of Southeastern Cable on August 13, 2007? *Page 3 
2. If so, to what benefits, if any, is plaintiff entitled due to his accident at work on August 13, 2007?
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was thirty-nine years old and had 15 years of experience as a data line/cable line installer. In July 2007, plaintiff approached Southeastern Cable to perform installation services.
Following the background check and drug screening required by Time Warner Cable, plaintiff was informed that he would be hired as an independent contractor once he provided a certificate of insurance showing that he maintained general auto, commercial liability and workers' compensation insurance. Southeastern Cable requires independent contractors to carry a workers' compensation policy, commercial auto and commercial general liability policy. Robert Hair explicitly informed his independent contractors that the coverage is to take care of them. The only requirement that Mr. Hair sets out for independent contractors is the policy limits; he does not require independent contractors to obtain the policy from a specific agent.
2. Plaintiff obtained the required insurance policy from his former spouse, Rhonda Capps. Plaintiff testified that Ms. Capps told him this was the correct insurance policy for him to go to work. In his application for the insurance policy, plaintiff excluded himself from workers' compensation coverage.
3. Plaintiff provided Mr. Hair with the Certificate of Insurance, which showed plaintiff had the required coverage prior to the initiation of any services. Mr. Hair was not *Page 4 
provided with a copy of the application and had no knowledge that plaintiff had excluded himself from workers' compensation coverage.
4. Plaintiff was instructed on how to comply with the requirements of Time Warner Cable by Tim Lewis and Chris Carter, who were also independent contractors with Southeastern Cable. The trainer's pay was reduced to fifty percent of the completed jobs, while the trainee was paid ten percent of the completed jobs. Plaintiff admitted that the terms of the jobs were defined by the terms of the contract with Time Warner Cable.
5. Plaintiff drove his own vehicle while performing jobs for Southeastern Cable pursuant to the Time Warner Cable contract. A removable magnetic sign was attached to the vehicle which indicated that plaintiff was performing work for Southeastern Cable on behalf of Time Warner Cable. In addition, plaintiff provided his own tools to perform the work. All independent contractors wear a shirt with a logo stating their name and the name of Southeastern Cable as a subcontractor for Time Warner Cable in accordance with the requirements of the contract between Time Warner Cable and Southeastern Cable. Plaintiff acknowledged that once a particular job was completed, plaintiff was not required to check in with Southeastern Cable.
6. Southeastern Cable had been in business for three years and two months as of the date of the hearing. Southeastern Cable is in a contractual relationship with Time Warner Cable to provide cable installation and repair services.
7. The contract with Time Warner Cable sets out certain requirements for Southeastern Cable. The requirements include completion of jobs in a timely manner, good personal appearance, and quality control.
8. Pursuant to the contract, Time Warner Cable requires contact with the customer prior to the close of the two hour window. If contact is not made, the independent contractor is *Page 5 
fined by Time Warner Cable. Upon completion of the job, the independent contractor calls Time Warner Cable to advise that the job has been completed. There is no requirement that the independent contractor communicate their status to Southeastern Cable.
9. The independent contractors have the ability to hire help. If an independent contractor is behind and another independent contractor chooses to help that person, the independent contractors establish the financial arrangements themselves. There is no requirement that the independent contractors report to the Southeastern Cable office in the morning. The independent contractors can turn in their completed work orders at any time. Southeastern Cable then turns the paperwork over to Time Warner Cable for payment. There are no restrictions regarding for whom the independent contractors may work.
10. Southeastern Cable does not control independent contractors' hours. In order to provide adequate service, Southeastern Cable requests that independent contractors notify them if they are planning to take time off. However, there is no vacation time provided and independent contractors are not paid during their time off.
11. If an independent contractor performed unsatisfactory work or was consistently late, or if Time Warner Cable received numerous complaints about them, the independent contractor would be removed from the schedule. Mr. Hair indicated that he could not "fire" the independent contractors as they were not employees of Southeastern Cable.
12. As of August 2007, Southeastern Cable had two employees and maintained a policy for workers' compensation coverage with Companion Insurance Company. As of August 2007 Southeastern Cable subcontracted installation jobs for Time Warner Cable to eight or nine independent contractors. The independent contractors are paid per job. Independent contractors are paid sixty percent of the amount the independent contractor bills. *Page 6 
13. The Full Commission finds that the testimony of Mr. Hair is more credible than that of Mr. Capps and as such, gives greater weight to the testimony of Mr. Hair.
14. On August 13, 2007 plaintiff was on a ladder to perform an installation for Southeastern Cable when he fell onto a concrete driveway, breaking his right and left feet in multiple places.
15. On August 13, 2007 plaintiff was treated at Southeastern Medical Center. On August 15, 2007, plaintiff presented to Dr. James A. Nunley at Duke University Medical Center for an evaluation of left foot pain. On August 30, 2007, plaintiff underwent an open reduction internal fixation of the left calcaneus and a closed reduction of the right calcaneus by Dr. Nunley.
16. As plaintiff had control over when he worked and his hours, apart from a concession to the customers of Time Warner Cable, made use of his own vehicle and tools to complete installations, made use of a special skill knowledge and training in cable line installation, was not subject to discharge due to methods used to perform installations, was free to use such assistants as he believed proper and had control over those assistants, performed work on a quantitative basis, i.e. per-installation completed, plaintiff was not an employee of Southeastern Cable, but rather, was an independent contractor.
17. As plaintiff was an independent contractor, there is no employment relationship with Southeastern Cable and plaintiff is not entitled to benefits pursuant to the Workers' Compensation Act.
 *********** *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. "To be entitled to maintain a proceeding for workers' compensation, the claimant must be, in fact and in law, an employee of the party from whom compensation is claimed." Youngblood v. North State Ford TruckSales, 321 N.C. 380, 383, 364 S.E.2d 433, 437 (1988). An independent contractor is not covered by the Workers' Compensation Act and does not come within the jurisdiction of the Industrial Commission. Id.
Plaintiff has the burden of proving that an employer-employee relationship existed at the time that the injury by accident occurred.Lucas v. Li'l General Stores,289 N.C. 212, 218, 221 S.E.2d 257, 261 (1976).
2. In Youngblood, the Court described the following four factors that strongly imply an employer-employee relationship under common law and the Workers' Compensation Act: (1) method of payment; (2) the furnishing of equipment; (3) direct evidence of exercise of control; and (4) the right to fire.Id. at 386, 364 S.E.2d at 439 (citation omitted). Beginning with the first factor described in Youngblood, plaintiff was paid based on a fixed per-installation contract price, not by any unit of time.
As to the second factor in Youngblood, plaintiff was required to provide his own tools and vehicle for his work, and he rented the uniform that he was required to wear. In addition, although there was evidence suggesting that it was economically infeasible for plaintiff to hire an assistant, there was no rule prohibiting plaintiff from making use of such assistants, and in fact Southeastern Cable encouraged installers to make use of other installers' assistants through the "buddy system" in order to prevent assigned work orders from being untimely completed. *Page 8 
As to the third factor in Youngblood, plaintiff was required by the nature of Time Warner's installation work orders to begin work on a particular work order within a specified window of time. However, plaintiff was not obligated to accept any particular work order and could, with the courtesy of advance notice, take himself out of the pool of available installers on any particular day in order to take an entire day off without pay.
As to the fourth and final factor in Youngblood, while Southeastern Cable retained the right to cease assigning any further work orders to a particular installer, there is no evidence, given the lack of on-site supervision, that Southeastern Cable had the authority or the means to require a particular installer to cease work on a particular work order before it had been completed. It follows that, once a work order had been assigned to an installer, Southeastern Cable was unable to "fire" the installer from that work order prior to its completion.
3. In Hayes v. Bd. of Trustees of Elon College,224 N.C. 11, 29 S.E.2d 137 (1944), the Supreme Court described the following eight contractual elements that tend to reflect an independent contractor relationship: the person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.Id. at 16, 29 S.E.2d at 140 (citations omitted). In regard to the factors reflecting an independent contractor relationship set forth inHayes, (a) the fact that it was an industry standard for cable installations to be performed by independent contractors demonstrates that plaintiff was engaged in an occupation that was often *Page 9 
operated as an independent business or calling; (b) plaintiff had 15 years of data-line and cable-line experience prior to working for Southeastern Cable, and performed cable installations for Southeastern Cable with no on-site supervision; (c) plaintiff was paid on a per-installation basis; (d) as noted above, plaintiff was not subject to discharge once an installation work order had been assigned; (e) plaintiff was in the regular employ of Southeastern Cable only to the extent that plaintiff made himself available to be assigned work orders by Southeastern Cable on a regular basis; (f) plaintiff was free to make use of assistants, or the assistance of other installers, as he wished; (g) if plaintiff obtained the assistance of another installer through the "buddy system," the two installers were free to divide the labor and payment for the installation as they saw fit; and (h) plaintiff selected his own time, in that he chose whether to make himself available to accept work orders on any particular day.
4. In light of the factors set forth in Hayes andYoungblood, the Full Commission concludes that plaintiff's relationship with Southeastern Cable at the time of his injury by accident was that of an independent contractor and not that of an employee.
5. While plaintiff argues that defendants should be estopped from relying on N.C. Gen. Stat. § 97-19 because the certificate of insurance received by Southeastern Cable was based on a "ghost" policy of workers' compensation insurance issued by the insurance agent to whom Southeastern Cable had allegedly directed plaintiff, the Full Commission concludes that Southeastern Cable reasonably relied on the facially valid certificate of insurance issued on behalf of plaintiff. *Page 10 
6. Based on the above findings and conclusions that plaintiff was an independent contractor at the time of his injury by accident on August 13, 2007, plaintiff does not come within the jurisdiction of the Industrial Commission. N.C. Gen. Stat. § 97-2(2).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim against defendants for compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Defendants shall pay an expert witness fee to Dr. James A. Nunley, II, in the amount of $300.00, if such fee has not already been paid.
3. Defendants shall pay the costs due the Commission.
This the 26th day of February, 2010.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ STACI T. MEYER COMMISSIONER
 *Page 1