***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full *Page 2 
Commission AFFIRMS with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing and in the Pretrial Agreement as:
 STIPULATIONS
1. Erie Insurance Group was the carrier on the risk for Craig Sims Acoustical Ceilings on or about September 4, 2008.
2. The issues to be determined by the Full Commission are as follows:
 a. Whether plaintiff was an employee of defendant Charles Williams or any of the other named defendant employers?
 b. Whether the North Carolina Industrial Commission has jurisdiction over this matter pursuant to the North Carolina Workers' Compensation Act?
3. The following exhibits were admitted into evidence at the hearing before the Deputy Commissioner:
 a. Stipulation #1, plaintiff's medical records, IC Forms and discovery responses;
 b. Stipulation #2, attempted service on Charles Williams; and
 c. Stipulation #3, surveillance of plaintiff.
 ***********
Based upon the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT *Page 3 
1. Plaintiff is a 33-year-old high school graduate who for many years worked installing acoustical ceiling tiles.
2. In 2007 Plaintiff started doing work for Mr. Gary Long at B L Acoustical Ceilings He worked sporadically for B L, was paid cash for his labor, and at the end of the year received a Form 1099. Plaintiff admitted at the hearing that the income he received in cash went unreported on his tax returns.
3. Plaintiff also worked for Acousti beginning in 2007. While at Acousti, Plaintiff worked with Mr. Brian Rowell, who gave Plaintiff a ride to work because Plaintiff did not have a driver's license. When Acousti assigned Plaintiff and Rowell to work at different locations, Plaintiff had to stop working because he did not have a ride to work.
4. Plaintiff testified at the hearing that he has not earned much money since 2006 because he has worked so sporadically. When asked at the hearing if he had held any job since 2006, one where he worked continuously week after week, Plaintiff responded, "Not really." Plaintiff went on to explain that he had just been picking up jobs as they became available, and that some weeks he might work 3 or 4 days, and other weeks he might not work at all.
5. Defendant Charles Williams has also worked in the acoustical ceiling tile business for many years. Several years ago he and Brian Rowell worked together as partners in a business called Perfect Square Acoustical. They split up sometime in 2006 when Mr. Rowell had a serious injury that prevented him from working. Mr. Williams was then self-employed in the acoustical ceiling business as a sole proprietor until he went to work for Acousti sometime in 2009.
6. When Williams and Rowell were working together as partners, Plaintiff would occasionally work odd jobs for them here and there, when they needed help. After Williams and *Page 4 
Rowell split up, Plaintiff would on occasion work for Rowell. Plaintiff has not worked on a job for Defendant Williams since 2006.
7. When Defendant Williams was working as a sole proprietor, he subcontracted ceiling work from other contractors. Sometimes he might have more than one job, in which case he might sub out his work to four or more subcontractors, while at other times he wouldn't have any work at all. Williams never had any employees, in part because he could not guarantee regular work to an employee.
8. When Williams did subcontract out work to others, the people who worked for him brought their own tools, chose their own hours, and directed and controlled their own work. Williams did not control or direct the details of the work. Those who performed work for him had independent use of their own special skill and knowledge regarding the installation of acoustical ceiling tiles, and brought with them all of the tools they would need to complete their work. Defendant Williams' involvement was limited to inspecting the work they performed at the conclusion of the job to make sure it was of satisfactory quality.
9. On those occasions when Plaintiff did work for Defendant Williams prior to 2007, Plaintiff furnished all of his own tools, including stilts, tile cutters, punches and hammer. Williams did not supervise Plaintiff's work and did not retain the right to discipline him. Plaintiff utilized his independent special skill and knowledge regarding acoustical ceiling tile installation when he did a job for Defendant Williams, and he conceded at the hearing that Williams never trained him.
10. On September 4, 2008, Plaintiff sustained multiple injuries when he fell approximately six feet from a scaffold at a State Employees Credit Union job site where *Page 5 
Defendant Craig Sims Acoustical Ceilings was a first tier subcontractor and Defendant Williams was a second tier subcontractor.
11. Following his September 4, 2008 fall from the scaffold, Plaintiff filed a Form 18 alleging injury arising out of and in the course of his employment with Defendant Williams. Plaintiff has maintained throughout this case that Williams was his employer. Plaintiff has never alleged or named another employer in this action. When asked at the hearing why he named Williams, and only Williams, as his employer, Plaintiff said that it was because Williams was the one with the workers' compensation insurance.
12. At the first hearing in this case on April 30, 2010, Plaintiff testified that Brian Rowell was the only person who contacted him about working on a job starting September 2, 2008. Specifically, when asked who contacted him to do some ceiling work in September 2008, Plaintiff testified, "That would have been Charles' partner, Brian." When asked at the first hearing by counsel for Craig Sims Acoustical about his conversation with Defendant Williams when Williams called him to work in September 2008, Plaintiff corrected defense counsel and responded that it was actually Brian Rowell who called him.
13. At the second hearing on September 14, 2010, Plaintiff changed his story and testified that he did speak with Williams about going to work for him in September 2008. Williams testified that he never spoke to Plaintiff about working for him on the State Employees Credit Union job and that he had no idea Plaintiff would show up at the job site.
14. On September 2, 3 and 4, 2010, Brian Rowell was working for Acousti on a job at a school in Wake Forest. Rowell was not working for or with Williams at that time. *Page 6 
15. Rowell, and Rowell alone, contacted Plaintiff in September 2008 to ask if he wanted to work on the job at the school in Wake Forest. Plaintiff's father, Guy Strickland, was also working on that job and was able to give Plaintiff a ride to the job site each day.
16. Strickland and Plaintiff worked at the school all day on September 2nd and 3rd, and briefly on September 4th. Strickland alone had contracted with Defendant Williams to work on the job at the State Employees Credit Union, so after Strickland left the job at the school, he went to the State Employees Credit Union. Plaintiff went with him, because Strickland was providing him a ride to and from work. Plaintiff testified that he didn't have to work and was free to leave the credit union job site if he wanted to walk home. Instead, unbeknownst to Williams or Craig Sims Acoustical, Plaintiff got on a scaffold and began doing some ceiling work at the credit union. It was only a short time before he fell off the scaffold.
17. Williams was not at the job site when Plaintiff fell. Williams learned about the fall when Guy Strickland called him.
18. Sometime after the injury Plaintiff went to Williams' home to ask for money. Williams gave him $50.00 because he felt sorry for Plaintiff. Plaintiff's testimony that Williams gave him $240 as payment for the hours he worked at the school and the credit union is not accepted as credible.
19. At no time during September 2008 when Williams was performing work that he had subcontracted from Craig Sims Acoustical Ceilings did Williams or any authorized agent acting on Williams' behalf enter into an appointment or contract of hire, express or implied, oral or written, with Plaintiff.
20. At no time during September 2008 when Williams was performing work that he had subcontracted from Craig Sims Acoustical Ceilings did Williams subcontract work to *Page 7 
Plaintiff, or subcontract work to an employer of Plaintiff. When Plaintiff began doing ceiling work at the credit union on September 4, 2008, he did so without the knowledge or authorization of, or promise of payment from, Defendants Williams and Craig Sims Acoustical Ceilings.
21. Plaintiff's testimony, offered in an attempt to establish an employer-employee relationship with Defendant Williams on the date of his injury, is not accepted as credible.
22. Plaintiff did not allege that he was an employee of Guy Strickland or Brian Rowell on September 4, 2008, and there is insufficient evidence of record to find that he was an employee of either at the time of his injury on September 4, 2008.
23. The employer-employee relationship did not exist between Defendant Williams and Plaintiff on September 4, 2008.
24. Defendant Craig Sims Acoustical Ceilings was brought into this action as an alleged statutory employer pursuant to N.C. Gen. Stat. § 97-19 when it appeared that Defendant Williams may have been non-insured on the date of Plaintiff's injury. Because Plaintiff failed to prove that he was an employee of Williams or an employee of any subcontractor of Williams, the provisions of N.C. Gen. Stat. § 97-19 do not apply, thereby absolving Defendants Craig Sims Acoustical and its workers' compensation carrier Erie Insurance Group of any potential liability as a statutory employer and rendering moot the issues surrounding the certificate of insurance.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. The existence of an employer-employee relationship at the time of the injury constitutes a jurisdictional fact. Askew v. LeonardTire Co., 264 N.C. 168, 141 S.E.2d 280 (1965); Youngblood v.North State Ford Truck Sales,321 N.C. 380, 364 S.E.2d 433 (1988). *Page 8 
2. The claimant has the burden of proving that the employer-employee relationship existed at the time of the alleged injury by accident. Hughart v. Dasco Transp., Inc.,167 N.C. App. 685, 606 S.E.2d 379 (2005).
3. The North Carolina Workers' Compensation Act defines "employee" as ". . . every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written. . . ." N.C. Gen. Stat. § 97-2(2).
4. "Whether one employed to perform specified work for another is to be regarded as an independent contractor or as an employee within the meaning of the Act is determined by the application of ordinary common law tests." Youngblood,supra at 383, 364 S.E.2d at 437, citing Richards v. NationwideHomes, 263 N.C. 295, 139 S.E.2d 645 (1965).
5. In 1944, the North Carolina Supreme Court set forth the factors to be considered in determining whether the claimant is an employee or an independent contractor in the case of Hayes v. ElonCollege, 224 N.C. 11, 29 S.E.2d 137 (1944). No one particular factor is controlling, all of the factors are not required, and "nothing in [Hayes] . . . suggests that the factors delineated . . . are the only relevant factors or that other facts should not be considered in the jurisdictional analysis." Capps v.Southeastern Cable, ___ S.E. 2d ___, 2011.
6. Because Plaintiff failed to establish the existence of the employer-employee relationship with Williams or any subcontractor of Williams, the provisions of N.C. Gen. Stat. § 97-19 do not apply and the North Carolina Industrial Commission does not have jurisdiction in this case. N.C. Gen. Stat. § 97-2.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enter the following: *Page 9 
 AWARD
1. Plaintiff claim is HEREBY DISMISSED as to all Defendants.
2. Each side shall pay its own costs.
This the ___ day of August, 2011.
 S/______________ TAMMY R. NANCE COMMISSIONER
CONCURRING
 S/______________ LINDA CHEATHAM COMMISSIONER
 S/______________ CHRISTOPHER SCOTT COMMISSIONER *Page 1